# GEORGE H. WINTERS v. MINNEAPOLIS & ST. LOUIS RAILROAD COMPANY.[1]

July 3, 1914.

Nos. 18,655—(184).

**Injury to servant — cause of injury — evidence.**

1. In this a personal injury suit it is *held* that the evidence fails to show that the use of a wrench instead of a lever in a hydraulic jack, charged as an act of negligence on the part of the defendant, was the cause of the injury to the plaintiff.

**Employment in interstate commerce.**

2. The plaintiff was engaged in repairing an engine in defendant's roundhouse, which engine for some time before and immediately prior to the plain-

1 Reported in 148 N. W. 106.

---

Note.—The authorities on the constitutionality, application, and effect of the Federal Employer's Liability Act are collated in an elaborate note in 47 L.R.A. (N.S.) 38.

tiff's injury had been used in hauling both intrastate and interstate commerce and which was likewise used immediately afterwards. It is *held* that the plaintiff was employed in interstate commerce and that the Federal Employer's Liability Act (35 St. 65) applied.

**Federal Employer's Liability Act — application of 1913 jury law.**
   3. In an action in a state court based upon the Federal Employer's Liability Act (35 St. 65), the five-sixths jury law (Laws 1913, c. 63) applies.

Action in the district court for Ramsey county by the guardian *ad litem* of the infant plaintiff to recover $25,000 for personal injury received by the infant while in the employ of defendant. The amended answer alleged that the injuries received were due solely to plaintiff's own carelessness and inattention to his own safety and because of his failure to observe for his own protection ordinary care, and that such omission on his part was the proximate cause of any injury received. It also alleged that the particular work being done by plaintiff was dangerous only because of the manner in which he chose to perform it; that the danger of performing the work in the manner selected by him was perfectly obvious to him, was fully comprehended and appreciated by him, and that he assumed the risk of the full consequences which came to him from so performing the work. The case was tried before Kingsley, J., who when plaintiff rested denied defendant's motion to dismiss the action and its motion for a directed verdict in its favor, and a jury which returned a verdict for $8,750 in favor of plaintiff. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed and new trial ordered.

*W. H. Bremner* and *F. M. Miner,* for appellant.
*Barton & Kay,* for respondent.

DIBELL, C.
This action was brought to recover damages sustained by the plaintiff while at work for the defendant in its round-house at Marshalltown, Iowa. There was a verdict for the plaintiff. The defendant appeals from the order denying its alternative motion for judgment or for a new trial.

1. The plaintiff, a young man of 20, and Elmer Larson, a young

man of 18, were engaged at the time of the plaintiff's injury in raising the front end of a locomotive and removing the timber upon which it had rested while the work of putting new tires on the drivers was being done. They were then to lower the locomotive to its proper place on the trucks. The timber was removed without difficulty. They used two hydraulic jacks, one under each end of the pilot-beam, the plaintiff the one at the right and Larson the one at the left. When the timber was removed the front end of the locomotive was supported by the two jacks. Difficulty was experienced in getting the casting above, which was attached to the locomotive, into the casting below on the engine trucks, into which it fitted when the locomotive was in condition for use. The jacks were raised and lowered several times without an effective result. Most of the maneuvering was done with the plaintiff's jack. Not getting the result desired the foreman, for a purpose not disclosed by the evidence, directed the plaintiff and Larson to take their jacks to the rear end of the locomotive. As the plaintiff started to push the block off preparatory to taking his jack away, the front end of the engine dropped or came down, the castings apparently going into place, and his hand was crushed between the pilot-beam and the jack. The claim is that Larson's jack at the left upon which the end of the locomotive rested went down and caused the locomotive end to drop or slip. It is claimed that the jack went down because a wrench was used as a substitute for a lever. There was expert testimony to the effect that when a wrench was so used it was likely to lower of its own weight to a point where it would cause a valve inside the jack to open and then the head of the jack would go down. The ordinary lever had a lug which came against an obstruction and prevented such a result.

The evidence is that Larson's jack, at the time of the foreman's direction to him to take it and go to the rear of the locomotive, was in proper position, with the pilot-beam resting upon it. There is no evidence as to the condition of it afterwards. No one saw it go down. There is no evidence as to what became of it. No one knows just how the accident happened.

Conceding that the defendant was negligent in permitting the use of a wrench in lieu of a lever, we are unable to say that a jury could

reasonably find that such negligence accounts for the plaintiff's injury. At the most such a finding is but a conjecture. It was just as likely a mere accident.

The court was in error in submitting the case to the jury upon the ground stated. The case is not one for judgment notwithstanding the verdict. There should be a new trial.

The views just expressed are those of a majority of the court. A minority are of the opinion that the jury might find, in the exercise of a sound judgment, without indulging in conjecture, that the head of the jack went down; that it went down as a result of the negligent use of the wrench in place of a lever; that such negligent use was the cause of the injury, and that the verdict should stand. The views of the writer are in accord with those of the minority.

In view of a new trial we proceed to a consideration of two questions directly presented and necessarily involved on a new trial. On these two questions the court are agreed.

2. The claim is made that the plaintiff was not employed in interstate commerce and that the Federal Employer's Liability Act (35 St. 65) does not apply.

It was stipulated that for several months prior to the injury the locomotive in question was used in hauling freight trains over the defendant's line of road in Iowa and other states, hauling both intrastate freight and interstate freight; that it was so used after plaintiff's injury; that the last time, prior to the injury, when the engine was used was on Ocober 18, 1912, when it came into Marshalltown pulling a freight train carrying both intrastate and interstate freight; and that the first time it was used after the injury was on October 21, 1912, when it pulled a train carrying such freight out of Marshalltown. The court instructed the jury that the plaintiff was employed in interstate commerce. This was correct within the Federal decisions as we read them. Pedersen v. Delaware, L. & W. R. Co. 229 U. S. 146, 33 Sup. Ct. 648, 57 L. ed. 1125; St. Louis, S. F. & T. R. Co. v. Seale, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. ed. 1129; Norfolk & W. R. R. Co. v. Earnest, 229 U. S. 114, 33 Sup. Ct. 654, 57 L. ed. 1096; Second Employers' Liability Cases, 223 U. S. 1, 5, 32 Sup. Ct. 169, 56 L. ed. 327, 38 L.R.A.(N.S.) 44; Law v.

Illinois Cent. R. Co. (C. C. A.) 208 Fed. 869; Illinois Cent. R. Co. v. Porter, 207 Fed. 311, 125 C. C. A. 55; Central R. Co. v. Colasurdo, 192 Fed. 901, 113 C. C. A. 379; Northern Pacific R. Co. v. Maerkl, 198 Fed. 1, 117 C. C. A. 237.

3. The court instructed the jury that they might return a five-sixths verdict as provided by Laws 1913, p. 54, c. 63. The defendant claims that this was error; that the cause of action came from an act of congress; and that it was entitled to a jury such as is contemplated by the Federal Constitution. The state court had jurisdiction. The law of the forum as to what constitutes a lawful jury applies. The character of the cause of action does not determine it. The five-sixths jury law is authorized by the state Constitution and is not prohibited to the state by the Federal Constitution. It is not meant that a Federal court sitting in this state would apply our five-sixths jury law. That question is not here. The instruction of the court was correct.

For the reasons stated in the first paragraph of the opinion there must be a new trial.

Order reversed and new trial granted.