ELLEN FRANCES MORIN, PLAINTIFF-RESPONDENT, AND
J. ALBERT MORIN, PLAINTIFF, v. SYLVIA BECKER,
DEFENDANT-APPELLANT.

Argued February 5, 1951, and February 12, 1951—Decided
March 5, 1951.

458

· *Mr. Isidor Kalisch* argued the cause for the appellant (*Messrs. Kalisch & Kalisch,* attorneys).

*Mr. William George* argued the cause for the respondent.

The opinion of the court was delivered by

VANDERBILT, C. J. This appeal from a judgment of the Law Division of the Superior Court in favor of the plaintiffs was taken to the Appellate Division of that court and while pending there was certified here on our own motion.

The facts, so far as here pertinent, may be simply stated. On October 22, 1948, the plaintiffs filed their complaint in a civil action against the defendant alleging that on July 25, 1947, the defendant committed an assault and battery on the plaintiffs resulting in injuries to them. On December 2, 1948, the defendant filed an answer generally denying the allegations of the complaint and by way of counterclaim asserted that an assault and battery had been committed by the plain-

tiffs on her with resultant injuries. In its charge to the jury the court said:

"This case, ladies and gentlemen, has been instituted subsequent to September 15, 1948, and, therefore, by virtue of a statute of our Legislature, it is not necessary that your verdict in this case be unanimous, that all twelve agree. It is only necessary that ten of the twelve agree."

The jury thereafter returned a verdict in favor of the plaintiffs in the sum of $7,000, which a polling of the jury revealed was ten for and two opposed. Judgment was accordingly entered for the plaintiffs and against the defendant on March 3, 1950. A subsequent motion by the defendant for a new trial was denied by the court, but with the plaintiffs' written consent the judgment was reduced to $5,000. From the judgment as thus reduced the defendant has taken this appeal.

The defendant contends (1) that the trial court had no power and was not vested with jurisdiction to apply the statute permitting a five-sixths jury verdict; (2) that she has been deprived of her constitutional right of trial by jury as guaranteed by both the State and Federal Constitutions; and (3) that she has been denied her right under the Federal Constitution to the equal protection of the laws. It is admitted by the defendant, however, that none of these questions were presented at the trial and that no objection was made to the charge of the trial court or to the verdict of the jury as entered.

It is a well established principle that our appellate courts will not consider questions not properly presented to the court below when an opportunity to present them was available, although exceptions to this rule are made when the questions raised on appeal go to the jurisdiction of the court below or when they are matters of great public concern. *State v. Jones*, 4 *N. J.* 207 (*Sup. Ct.* 1950); rehearing denied, 4 *N. J.* 374 (*Sup. Ct.* 1950); *Roberts Electric, Inc., v. Foundations and Excavations, Inc.*, 5 *N. J.* 426 (*Sup. Ct.* 1950); *State v. Taylor*, 5 *N. J.* 474 (*Sup. Ct.* 1950). The defendant asserts that we should consider the constitutional questions here raised because the trial court was without power or juris-

diction to enter a judgment issued on other than a unanimous verdict. This argument is wholly without merit in view of the decision in *Margulies v. Goldberg,* 101 *N. J. L.* 75 (*E. & A.* 1925), wherein it was stated:

"The defendant was entirely willing to speculate on the verdicts by ten jurors, and had they been favorable to him he would not be here complaining. This conduct, of itself, was a valid waiver of the right to trial by a jury of twelve. * * * In fact, the defendant, by not objecting to the course [of action] taken by the trial judge [withdrawing two of the jurors and permitting the trial to proceed before only ten jurors], and in participating in the trial on the merits thereafter, waived his right to a trial by a jury of twelve, and, in effect, consented to a trial by a jury of ten." (*Pp.* 79, 82.)

This language is especially appropriate here and effectively disposes of the defendant's contention that the court below was without jurisdiction to enter the judgment appealed from. Because the question of the validity of the five-sixths jury statute, however, is of such vital importance to the public, we will proceed to consider the questions raised by the defendant as to its constitutionality.

 The defendant's contention that her rights under the Federal Constitution have been violated by reason of the statute authorizing a five-sixths jury verdict may be disposed of speedily. The United States Supreme Court has consistently held that neither the Seventh nor Fourteenth Amendment to the Federal Constitution is violated by a state law permitting a verdict to be entered other than by a unanimous jury, the several states being free to regulate trials in their own courts in their own way. Thus, in the case of *Maxwell v. Dow,* 176 *U. S.* 581, 44 *L. Ed.* 597 (1900), which was concerned with the validity of a statute authorized by the Utah Constitution and providing that criminal prosecution may be had on information as well as on indictment, that in courts of general jurisdiction, except in capital cases, a jury shall consist of eight jurors and in courts of inferior jurisdiction of four jurors, and that while in criminal cases a verdict must be unanimous in civil cases three-fourths of the jurors may find a verdict, the court said:

"The right to be proceeded against only by indictment, and the right to a trial by twelve jurors, are of the same nature, and are subject to the same judgment, and the people in the several states have the same right to provide by their organic law for the change of both or either. Under this construction of the amendment [Fourteenth] there can be no just fear that the liberties of the citizen will not be carefully protected by the states respectively. It is a case of self-protection, and the people can be trusted to look out and care for themselves. There is no reason to doubt their willingness or their ability to do so, and when providing in their Constitution and legislation for the manner in which civil or criminal actions shall be tried, it is in entire conformity with the character of the Federal government that they should have the right to decide for themselves what shall be the form and character of the procedure in such trials, whether there shall be an indictment or an information only, whether there shall be a jury of twelve or a lesser number, and whether the verdict must be unanimous or not. These are matters which have no relation to the character of the Federal government. As was stated by Mr. Justice Brewer * * * in *Brown v. New Jersey*, 175 *U. S.* 172, *ante*, 119, 20 *Sup. Ct. Rep.* 77, the state has full control over the procedure in its courts, both in civil and criminal cases, subject only to the qualification that such procedure must not work a denial of fundamental rights or conflict with specific and applicable provisions of the Federal Constitution. The legislation in question is not, in our opinion, open to either of these objections." (176 *U. S.*, *p.* 605, 44 *L. Ed.*, *p.* 606.)

Moreover, in *Minneapolis & St. L. R. Co. v. Bombolis,* 241 *U. S.* 211, 60 *L. Ed.* 961 (1916), it was held that the Federal Constitution did not require a unanimous verdict in the state courts even when the rights being enforced accrued under a federal statute. And in *Walker v. Sauvinet,* 92 *U. S.* 90, 23 *L. Ed.* 678 (1876), it was decided that the Federal Constitution was not violated by a state statute which in certain cases dispensed with the necessity of a jury verdict altogether. It may be pointed out in passing that the decision in *American Publishing Co. v. Fisher,* 166 *U. S.* 464, 41 *L. Ed.* 1079 (1897), and the cases decided on its authority to the effect that legislation providing for a verdict by less than a unanimous jury violates the Seventh Amendment to the Federal Constitution are of no concern here, because the statutes there involved were enacted by territorial legislatures and not by sovereign states which are not subject to the Seventh Amendment.

The federal question disposed of, inquiry must next be directed to the question of whether or not the defendant has been denied any rights guaranteed her by the New Jersey Constitution. Article I, paragraph 9, of the Constitution of 1947 provides:

"The right of trial by jury shall remain inviolate; but the Legislature may authorize the trial of civil causes by a jury of six persons when the matter in dispute does not exceed fifty dollars. The Legislature may provide that in any civil cause a verdict may be rendered by not less than five-sixths of the jury. The Legislature may authorize the trial of the issue of mental incompetency without a jury."

Pursuant to this specific constitutional authorization, the Legislature by section 1 of chapter 120 of the Laws of 1948 (*R. S.* 2:27–233.1) provided:

"In any civil cause wherein a jury shall be impanelled, a verdict may be rendered by ten or more of the jury agreeing where the trial is had by a jury of twelve persons and by five or more of the jury agreeing where the trial is had by a jury of six persons. Any verdict so rendered shall have the same force and effect as though it had been rendered by the entire jury."

Section 3 of the act (*R. S.* 2:27–233.3) further provided that it "shall not apply to any cause commenced before the effective date of this act" and section 4 (*R. S.* 2:27–233.4) that it shall take effect on September 15, 1948, the date on which the Judicial Article of the Constitution of 1947 became effective, *Article* XI, *Section* IV, *paragraph* 14.

▇ In view of this specific and unequivocal constitutional authorization it cannot be successfully argued that the Legislature was without the power to enact this legislation. The case of *New York Cent. R. Co. v. Hazelbaker*, 199 *N. E.* 425 (*Ind.* 1936), cited by the defendant in support of her argument that the act contravened her constitutional right to a jury trial, is not to the contrary, for the Indiana statute authorizing a five-sixths jury verdict which was there held to be unconstitutional was not founded upon any such express constitutional authorization as is present here. The difference between the situation in Indiana and all other states holding

such statutes unconstitutional and the situation found here and in other states holding such statutes valid is well expressed in *Minnequa Coöperage Co. v. Hendricks,* 197 *S. W.* 280 (*Ark.* 1917), where it was stated:

> "In several of the states majority verdicts may be rendered in civil cases, but this is the result of express constitutional authority. In construing sections of the Constitution similar to the one under consideration [merely that the right to a jury trial shall remain inviolate], the courts have uniformly held that any legislation authorizing a verdict by less than the whole number of jurors in any case where a jury trial is a matter of right is unconstitutional unless such legislation is expressly authorized by a constitutional provision." (*P.* 282.)

Even assuming the legislation in question to be otherwise constitutional, the defendant further contends that it is unconstitutional to apply it to the instant case because of the fact that while this action was commenced after September 15, 1948, and therefore ostensibly is within its provisions, both the plaintiffs' and the defendant's causes of action and their defenses thereto arose prior to September 15, 1948, and that her constitutional right to a trial by jury became vested as of the date that the cause of action arose and could not thereafter be divested by the Legislature. The issue here presented is thus narrowed to the inquiry as to whether or not such legislation, otherwise valid, may be applied so as to govern the trial of causes of action which arose prior to the effective date thereof. No issue is presented as to whether the act in question applies to cases pending at the time it became effective, for it expressly provides otherwise.

It is highly significant that this precise issue has been presented to the highest court in five other states and in each instance it has been resolved against the position taken by the defendant. It will be enlightening, therefore, to refer to these decisions in some detail.

The Supreme Court of Missouri in *Roenfeldt v. St. Louis & S. Ry. Co.,* 79 *S. W.* 706 (1904), thus decided the issue:

> "The defendant, in its motion for a new trial, raised the question of the constitutionality of the law authorizing nine of a jury in a civil case to render a verdict, * * *. The only new idea in con-

nection with that subject that is advanced in the brief of counsel in this case is that, as this action was begun and the issues joined prior to the adoption of the constitutional amendment, the cause could be tried only under the mode of procedure existing when the suit was brought or the issues were joined, and therefore the constitutional amendment authorizing nine of the jury to render a verdict does not apply to this case. No one has a vested right to have his cause tried by any particular mode of procedure. The state has the sovereign power to prescribe the mode of trying causes in its courts, and to alter the same from time to time as it may see fit. If the mode is prescribed by an act of the General Assembly, it may be changed by an act of the General Assembly; if it is prescribed by the Constitution, it may be changed by the power which makes the Constitution. The learned counsel for appellant have advanced no argument in support of the proposition, and for that reason we are satisfied there is no argument to support it." (*P.* 708.)

In a more recent case in Missouri it was held that the validity of a verdict rendered by less than a unanimous jury no longer presented a constitutional issue sufficient even to give its Supreme Court jurisdiction. *State v. American Surety Co. of New York,* 210 *S. W.* 428 (1919).

The same question confronting us here was presented to the Supreme Court of Ohio in the case of *R. A. Elder & Co. v. Shoffstal,* 107 *N. E.* 539 (1914). On January 1, 1913, an amendment to the Constitution of Ohio became effective which provided:

"The right of trial by jury shall be inviolate, except that, in civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury." (*Section* 5, *Article* 1.)

This amendment, like the corresponding provision of our own Constitution, was not self-executing and required legislative action before it became effective, and until such time litigants were entitled to the unanimous verdict of 12 jurors. Pursuant to the authorization thus granted it, the Ohio Legislature on February 6, 1913, passed an act to the effect that:

"In all civil actions a jury shall render a verdict upon the concurrence of three-fourths or more of their number. The verdict shall be in writing and signed by each of such jurors concurring therein." (*Section* 11455, *General Code.*)

This act was approved by the governor and filed in the office of the secretary of state on February 13, 1913, and by the Ohio Constitution became effective 90 days thereafter. Other legislation in effect at the time (*General Code, Section 26*) provided that such statutes should not affect pending actions unless they expressly so provided. The jury in the case before the Ohio Supreme Court had been impaneled on May 6 and its verdict returned on May 21, so 'that it was during the course of the trial that the statute permitting a three-fourths verdict became effective. In disposing of the case on appeal the court stated:

"The General Assembly of the state in adopting this Amendment acted within the scope of its constitutional authority, and, therefore, if this case comes within the operation of that amendment, the charge of the common pleas court [that a three-fourths verdict could be returned] was right. This act of the General Assembly is remedial in its nature and must be considered and construed in connection with section 26 of the General Code; * * *."

This act amending section 11455, General Code, did not expressly provide that it should affect pending actions. It is clear therefore that it can have no application to this case, for this [case] was not only a pending action, but the jury had been impaneled and the trial had proceeded for at least eight days before this law went into effect. * * *"

Counsel call our attention to the fact that the several causes of action pleaded in the answer and cross-petition of plaintiffs in error arose in March and April, 1913, and after the amendment to the Constitution went into effect. Section 11455, as amended, however, relates to the remedy only, and therefore does apply to all actions commenced in the common pleas courts of this state after the 14th day of May, 1913, regardless of the time when the cause of action arose." (*Pp.* 541, 542.)

In Oklahoma there has been a series of cases on the particular issue here before us, and in each case it has been held that the time when the cause of action arose was immaterial in so far as it determined whether a party was entitled to a unanimous rather than a less than unanimous jury verdict. Two of these cases deserve special attention. In *Independent Cotton Oil Co. v. Beacham*, 120 *Pac.* 969 (1911), the Supreme Court of Oklahoma held:

"The question of assumption of risk and contributory negligence is settled by section 6, art. 23, of the Constitution, which provides:

'The defense of contributory negligence or of assumption of risk shall, in all cases whatsoever, be a question of fact, and shall, at all times be left to the jury.' Counsel for defendant take the position that, as the injury was inflicted prior to statehood, the time the injury was inflicted plaintiff was not entitled to the benefit of said provision, although the Constitution was adopted prior to the commencement of the action, for the reason that section 1 of the Schedule preserved the status of all suits, rights, etc., arising prior to statehood as they existed under the territorial government. We cannot agree with counsel. The rule is that no person has a vested right in any particular mode of procedure, and if, before the trial of the cause, a new law of procedure goes into effect, it governs, unless the statute itself provides otherwise. There is nothing in the Constitution nor the Schedule indicating a purpose to restrict the power of the state to change modes of procedure as to causes of action arising prior to the admission thereof, except as to actions that were pending at that time. * * *″ (*Pp.* 970, 971.)

The Oklahoma Constitution also provided that in civil cases nine or more jurors could return a verdict, whereas prior to its adoption a unanimous verdict was required. Counsel for the defendant requested an instruction that the verdict must be unanimous, but the court instructed the jury that nine jurors concurring could render a verdict. On appeal it was contended that this was contrary to the decision in *Pacific Mutual Life Ins. Co. v. Adams,* 112 *Pac.* 1026 (*Okla.* 1910), and other decisions in the state. This argument was disposed of in the *Beacham case* as follows:

"We think the cases are distinguishable in this: The *Adams Case, supra,* and the *Cundieff* Case, which it followed (*C. C. A.*) 171 *Fed.* 319, were pending at the time of the erection of the state, and the court held, and correctly, we think, that the right to a trial by a jury of 12 was preserved by section 1 of the Schedule, because the action was pending, and therefore was embraced within the terms, 'actions, suits, proceedings,' which section 1, *supra,* declares shall not be affected by the change in the forms of government, but shall continue as if no change in government had taken place. Clearly the case at bar did not fall within the terms, 'actions, suits, or proceedings,' and if the right defendant claims is carried over by the Schedule, it must be because he had some right within the meaning of that term as used in the Schedule.

There is no property in a naked cause of action for tort, but simply a cause of action, based upon a personal injury. *Epstein v. Handverker,* 116 *Pac.* 789. It is too nebulous a right, if a right at

all, to hold inviolate against the right of a sovereign state to remedy its mode of procedure, as the exigencies of the administration of justice may require." (*Pp.* 971-972.)

In a subsequent decision in an action in tort to recover for injuries arising out of an accident at a railroad crossing, *Chicago R. I. & P. Ry. Co. v. Baroni,* 122 *Pac.* 926 (1912), the Oklahoma Supreme Court reiterated:

"The next assignment of error presented by the defendant is that it was entitled to a unanimous verdict. The injury occurred prior to the adoption of the Constitution, but the suit was brought afterwards, and in such cases there is no right to a unanimous verdict, as this is a matter of procedure which is not protected by Section 2 of the Schedule. This exact point has been settled by the case of *Independent Cotton Oil Co. v. Beacham,* 120 *Pac.* 969, decided by the Supreme Court on September 12, 1911, but not yet officially reported." (*P.* 928.)

Other Oklahoma cases affirming the decisions on this issue in the *Beacham* and *Baroni* cases are *Midland Valley R. Co. v. Adkins,* 127 *Pac.* 867 (1912) ; *St. Louis & S. F. Ry Co. v. Ramsey,* 132 *Pac.* 478 (1913) ; and *Midland Valley R. Co. v. Larson,* 138 *Pac.* 173 (1914).

In the case of *Miami Copper Co. v. State,* 149 *Pac.* 758 (1915), an action in the nature of debt to recover a statutory penalty, the Supreme Court of Arizona had occasion to pass upon the very issue which here confronts us. Pursuant to express constitutional authorization, the Arizona Legislature on April 1, 1913, passed an act to be effective October 1, 1913, providing that in all civil cases the concurrence of nine of the twelve jurors would be sufficient to render a verdict. On June 19, 1913, however, prior to the effective date of this act, the case was submitted to the jury. At that time a three-fourths verdict was permissible in civil actions, except those which were cognizable at common law where a unanimous verdict was required by the Arizona Constitution. Apparently under the impression that the particular case did not fall within this exception, the trial court entered judgment upon a verdict concurred in by less than twelve jurors. On appeal the Arizona Supreme Court, after holding that the action was one cognizable at common law, stated:

"It follows therefore that the cause must be reversed and remanded for a new trial because there has been no verdict which the law of this state recognizes and upon which judgment could be entered. Under the law as it existed when the verdict was received, a concurrence therein by a number less than twelve of the jurors was in fact no verdict, but resulted in a mistrial. Since the trial of this cause, however, the law has been changed in accordance with the sanction of the Constitution, and, upon the retrial, a concurrence of nine jurors will be competent to render a verdict in the case. Though action was begun and issues joined prior to the adoption of a law authorizing nine [or more] jurors in a civil case to render a verdict, a verdict so rendered is valid, since there is no vested right in the modes of procedure. *Steinfeld v. Nielsen,* 15 *Ariz.* 424, 139 *Pac.* 879; *Roenfeldt v. St. Louis, etc., R. Co.,* 180 *Mo.* 554, 79 *S. W.* 706." (*Pp.* 760-763.)

██ That statutes providing for other than unanimous verdicts are procedural in nature was also clearly pointed out by the Supreme Court of Minnesota in the case of *State v. Longwell,* 160 *N. W.* 189 (1918), which was a proceeding to compel the defendant to support a bastard child. The defendant contended that the proceeding was essentially criminal in nature and that therefore the rules of criminal procedure which required a unanimous verdict should have been applicable rather than a statute permitting a five-sixths verdict in civil proceedings. After deciding that the action was not primarily criminal in nature, the court said:

"The five-sixths jury statute relates to the practice in the trial of an action, and it seems clear that the divided verdict thereby authorized is a matter of procedure, and not a matter of substantive law. It was so treated and held in *Bombolis v. Railway Co.,* 128 *Minn.* 112, 150 *N. W.* 385, and *Winters v. Railway,* 126 *Minn.* 260, 148 *N. W.* 106. And the view there taken was sustained by the Supreme Court in *M. & St. L. Ry. Co. v. Bombolis,* 241 *U. S.* 211, 36 *Sup. Ct.* 595, 60 *L. Ed.* 961. It was there held that in actions in the state courts predicated upon the federal Employers' Liability Act the state practice and procedure, including the five-sixths jury law, controlled the rights of parties, and that the railway company is not in such case entitled to a jury trial, or to a verdict, in harmony with the federal Constitution, or at common law, but must submit to state procedure in that respect. That is ample authority for our conclusion that the five-sixths jury law is a matter of procedure, and applies to a proceeding like that in the case at bar." (*P.* 190.)

In the previous case of *Winters v. Minneapolis & St. L. R. Co.,* 148 *N. W.* 106 (1914), cited with approval in the *Long-well* case, the Minnesota Supreme Court had held that the five-sixths jury law applied to an action arising out of the Federal Employer's Liability Act, 35 *Stat.* 65, as the result of a railroad accident, even though the accident had occurred in October, 1912, and the statute authorizing a five-sixths jury was not enacted until 1913.

The foregoing cases demonstrate conclusively that a statute such as the act here involved may validly be applied to the trial of a cause of action that had arisen prior to the effective date of the statute. Underlying these decisions are the fundamental propositions that the mode of trial, whether it be by jury or otherwise, is a matter of procedure and that there can be no vested rights in such matters and that except as protected by the Constitution they are subject to change. When such changes are made they operate to control all proceedings then pending or commenced thereafter, unless it is otherwise expressly provided, regardless of when the cause of action arose. This is so because of the fact that while statutes generally operate prospectively and not retrospectively, statutes relating to remedies or procedure do not create new or take away vested rights. 50 *Am. Jur., Statutes,* § 482, *p.* 505; 59 *C. J., Statutes,* § 700, *p.* 1183; 2 *Sutherland, Statutory Construction* (*3rd ed.* 1943), § 2210, *p.* 130; *Crawford, Construction of Statutes* (1940), §§ 285, 286, *p.* 581. As was stated in *Wanser v. Atkinson,* 43 *N. J. L.* 571, 574-575 (*Sup. Ct.* 1881) :

"Let it be shown in any case that the right of trial by jury is unsecured by any express constitutional clause, and it then becomes a mere incident of the procedure for the enforcement or defense of rights, and, as all such incidents, is subject to legislative supremacy. Justice Cooley seems to me to state in brief the result of true principles and of the adjudged cases, when he says:

'It would seem that a right cannot be regarded as a vested right, unless it is something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws; it must have become title, legal or equitable, to the present or future enjoyment of property, or to the present or future enforcement of a

demand, or a legal exemption from a demand made by another.' *Const. Lim.* 359.

'The right to a particular remedy is not a vested right. This is the general rule; and the exceptions are of those peculiar cases in which the remedy is part of the right itself. As a general rule, every state has complete control over the remedies which it offers to suitors in its courts. It may abolish one class of courts and create another. It may give a new and additional remedy for a right already in existence. And it may abolish old remedies and substitute new.' *Id.* 361.

'And any rule or regulation in regard to the remedy which does not, under the pretense of modifying or regulating it, take away or impair the right itself, cannot be regarded as beyond the proper province of legislation.' *Id.* 362.

\* \* \* In accordance with these views, it must be held that the plaintiff did not acquire a vested right to trial by jury on appeal, simply because the statutes provided for such a trial when his wrong was suffered, and that it was within the authority of the legislature to abolish that mode of remedy and substitute for it trial by the judges alone."

The statute in question not being violative of either the New Jersey or Federal Constitution, the judgment appealed from is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—6.

*For reversal*—None.