837 A.2d 384 (2003)
364 N.J. Super. 473
Roseann LAMANNA, Plaintiff-Appellant,
v.
PROFORMANCE INSURANCE COMPANY, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted October 21, 2003.
Decided December 5, 2003.
*385 Gill & Chamas, attorneys for appellant (Paul K. Caliendo, on the brief).
Methfessel & Werbel, Edison, attorneys for respondent (Martin McGowan, on the brief).
Before Judges SKILLMAN, COBURN and FISHER.
The opinion of the court was delivered by COBURN, J.A.D.
In this personal injury action, plaintiff sought benefits under the uninsured motorist provision of an automobile insurance policy issued by defendant Proformance Insurance Company. After liability had been established in arbitration proceedings, the issue of damages was submitted to a jury in the Law Division with an instruction, to which there was no objection, that all eight jurors would deliberate and that agreement by six would be sufficient to return a verdict. By a 6-2 vote, the jury determined that plaintiff was not entitled to a monetary award, and a judgment of no cause for action was entered. Plaintiff appeals, and we affirm.
The only substantial question is whether the judgment should be vacated because the verdict was returned by a 6-2 vote. The first indication on the record of the trial court's decision that eight jurors would deliberate, and that the votes of six of them would be sufficient to decide the case occurred just prior to summation when the trial court gave copies to counsel of the proposed jury verdict form, which included this sentence: "[Note: A vote of at least six jurors is required.]" While the number of deliberating jurors was not stated, it is obvious that counsel understood that the eight jurors who had been chosen at the beginning of the trial would deliberate. During his charge to the jury, the judge expanded on the meaning of the verdict form, repeatedly stressing that six of the eight deliberating jurors could decide each of the submitted issues. Since the record contains no discussion of either issue prior to the verdict and certainly no indication of the parties' consent, the case was submitted to the jury in a manner inconsistent with Rule 1:8-2. After the 6-2 verdict was returned, plaintiff unsuccessfully moved for a new trial based on various grounds, including the violation of Rule 1:8-2. However, since the objection was not timely, plaintiff is not entitled to reversal on this ground unless she can satisfy the plain error rule, R. 2:10-2.
Under Article I, paragraph 9 of the New Jersey Constitution, the Legislature may provide for six-person juries in civil cases and "may provide that in any civil cause a verdict may be rendered by not less than five-sixths of the jury." The Legislature has followed that course. N.J.S.A. 2B:23-1b *386 states that "[j]uries in civil cases shall consist of 6 persons unless the court shall order a jury of 12 persons for good cause shown." And N.J.S.A. 2B:23-17 states that "[i]n any civil trial by jury, at least five-sixths of the jurors shall render the verdict unless the parties stipulate that a smaller majority of jurors may render the verdict."
Relying on Morin v. Becker, 6 N.J. 457, 79 A.2d 29 (1951), our dissenting colleague argues that N.J.S.A. 2B:23-17 is unconstitutional to the extent that it permits the parties in a civil action to stipulate to a majority verdict of less than five-sixths. This point was not advanced by appellant; nor was notice given to the Attorney General as is required by R. 2:5-1(h). In any event, we note that in Morin the Court dealt separately with the issue of the constitutionality of the statute which then governed civil jury verdicts, L. 1948, c. 120, § 1, and provided for five-sixths verdicts, and the issue of waiver. As to waiver, the Court said this:
The defendant asserts that we should consider the constitutional questions here raised because the trial court was without power or jurisdiction to enter a judgment issued on other than a unanimous verdict. This argument is wholly without merit in view of the decision in Margolies v. Goldberg, 101 N.J.L. 75, 127 A. 271 (E. & A.1925), wherein it was stated:
"The defendant was entirely willing to speculate on the verdicts by ten jurors, and had they been favorable to him he would not be here complaining. This conduct, of itself, was a valid waiver of the right to trial by a jury of twelve. * * * In fact, the defendant, by not objecting to the course [of action] taken by the trial judge [withdrawing two of the jurors and permitting the trial to proceed before only ten jurors], and in participating in the trial on the merits thereafter, waived his right to a trial by a jury of twelve, and, in effect, consented to a trial by a jury of ten." (Pp. 79, 82.)
This language is especially appropriate here and effectively disposes of the defendant's contention that the court below was without jurisdiction to enter the judgment appealed from. Because the question of the validity of the five-sixths jury statute, however, is of such vital importance to the public, we will proceed to consider the questions raised by the defendant as to its constitutionality.
[6 N.J. at 60-61, 77 A.2d 240.]
We are satisfied that the Court's comments on the waiver issue are equally applicable to the instant appeal. As in Morin, defendant by its silence waived the right to argue on appeal that the verdict violated the State Constitution.
Rule 1:8-2 implements the constitutional and statutory provisions described above. In relation to this case, the pertinent subsections are (b)(3), which provides for six jurors unless "more than six jurors remain prior to the commencement of deliberations and the parties then agree on the record that all remaining jurors shall deliberate," and (c)(3), which provides that in that situation "the verdict or finding shall be by agreement of five-sixths of the deliberating jurors, unless the parties have otherwise agreed on the record prior to commencement of deliberations."
In Walder, Sondak, Berkeley & Brogan v. Lipari, 300 N.J.Super. 67, 692 A.2d 68 (App.Div.), certif. denied, 151 N.J. 77, 697 A.2d 548 (1997), the trial court permitted the jury to decide the case by a 6-2 vote. At that time, Rule 1:8-2(c) provided for a five-vote "unless the parties stipulate that a verdict or finding by a smaller majority of the jurors shall be taken as the verdict or finding of the jury." Plaintiff *387 claimed that the defendants had agreed to accept a 6-2 jury vote in an unrecorded discussion with the trial court, while defendants denied that, contending that their counsel had simply failed to object. We refused to resolve that factual dispute, assuming instead that defendants were correct, and we then held that the trial court's error would not be recognized on appeal as plain error for the following reasons:
Unlike the typical instance of "plain error" exception to Rule 2:10-2, defendants' acquiescence or inaction itself obviously led the court to believe that its openly-communicated recommendation as to the eight-person jury vote and its jury charge on that subject was agreeable. If the defendants had an objection to the procedure used, that objection should have been made known to the judge prior to jury deliberations. The judge could readily have reduced the jury to six persons, or altered the vote instruction. Under these circumstances, we do not agree with defendants' belated objection. To do so would condone a tactic of ... awaiting the outcome, and then raising the issue on appeal when the outcome is unfavorable. We find no plain error to justify reversal.
[300 N.J.Super. at 82, 692 A.2d 68.]
Following our decision, the Court modified Rule 1:8-2 to expressly require that the agreements authorized by the rule be placed on the record. Judge Pressler has observed that subsection (c)(3) was intended to "resolve[] the problem raised by" the Walder decision. Pressler, Current N.J. Court Rules, comment 4 on R. 1:8-2 (2004). Plaintiff interprets that remark as indicating that the rule was meant to reject Walder's plain error analysis. We disagree.
Although the prior rule did not expressly state that the agreement had to be on the record, that requirement was implicit in the rule's use of the word "stipulate," since "all proceedings in court shall be recorded verbatim except, unless the court otherwise orders, pretrial and settlement conferences, case management conferences, calendar calls, and ex parte motions." R. 1:2-2. See Fehnel v. Fehnel, 186 N.J.Super. 209, 217, 452 A.2d 209 (App.Div.1982) (criticizing unrecorded chamber conferences respecting critical stages of litigation). The amendments to Rule 1:8-2 were intended to avoid or reduce the recurrence of factual disputes arising from reliance on unrecorded stipulations with respect to one aspect of the jury charge; namely, how many jurors would be sufficient to decide the case. Nothing in the new rule suggests an intent to make the plain error rule irrelevant in this context or to overrule Walder. In our view, the reasoning of Walder is sound and its result was required by Morin v. Becker, supra. Since a 6-2 verdict in a civil case may be agreed to by the parties, a party who fails to object in a timely manner to submission of the case to the jury on that basis cannot thereafter rely on the plain error rule, R. 2:10-2. We expect trial courts to adhere to the rule, but an error in that regard is not clearly capable of producing an unjust result.
Plaintiff's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).
Affirmed.
FISHER, J.A.D., dissenting.
The majority has determined that a civil verdict rendered by less than five-sixths of the jury members may nevertheless be *388 sustained because of counsel's failure to object. I respectfully disagree.[1]

I
In adopting the 1947 Constitution, the people of this State permitted the Legislature to authorize the trial of civil causes by six person juries and to also "provide that in any civil cause a verdict may be rendered by not less than five-sixths of the jury." N.J. Const. Art. I, ¶ 9 (1947). This constitutional provision originally applied only to civil causes "when the matter in dispute does not exceed fifty dollars." Ibid. At the 1973 general election, the people of this State removed the monetary limitation, authorizing the Legislature to allow for six person juries in all civil causes.
The Legislature enacted N.J.S.A. 2A:80-2 in 1948, which faithfully adhered to the Constitution by allowing for six member civil juries and verdicts rendered "by 5 or more of the jury agreeing." N.J.S.A. 2A:80-2 was repealed in 1995 and replaced by N.J.S.A. 2B:23-17, which permits civil juries to render verdicts based on five-sixths of their members but which, in derogation of the Constitution, also authorizes "a smaller majority" to render a verdict, so long as the parties so stipulate.
Other than authorizing six person juries and verdicts rendered by "not less than five-sixths" of the jury members in civil actions, Article I, paragraph 9 declares that the "right of trial by jury shall remain inviolate," meaning that the Legislature was not empowered to further detract from the common law right to trial by jury. I would conclude, from a simple comparison of the Constitution and the current legislation, that the authorization of verdicts based on less than a five-sixths majority is prohibited by Article I, paragraph 9 and, as a result, would hold N.J.S.A. 2B:23-17 unconstitutional to that extent.
In my view, the partial invalidity of N.J.S.A. 2B:23-17 is demonstrated by Morin v. Becker, 6 N.J. 457, 464, 79 A.2d 29 (1951), where the constitutionality of N.J.S.A. 2A:80-2 was considered. The Court held N.J.S.A. 2A:80-2 constitutional because, unlike N.J.S.A. 2B:23-17, its illegitimate successor, N.J.S.A. 2A:80-2 perfectly mirrored the authority granted by the people of this State in Article I, paragraph 9 of the New Jersey Constitution. In so holding, Morin unmistakably concluded that what constitutes a valid jury verdict must come from the constitution and may not be further diminished or eroded by legislative action. In speaking for the Court, Chief Justice Vanderbilt quoted the decision of another state's highest court:
courts have uniformly held that any legislation authorizing a verdict by less than the whole number of jurors in any case where a jury trial is a matter of right is unconstitutional unless such legislation is expressly authorized by a constitutional provision.

[Id. at 464, 79 A.2d 29 (emphasis added), quoting Minnequa Cooperage Co. v. Hendricks, 130 Ark. 264, 197 S.W. 280, 282 (1917).]
Because the trial judge accepted a verdict based upon the agreement of only three-fourths of the deliberating jurors, I would conclude that this verdict was constitutionally infirm and reverse.

II
I also respectfully disagree with the majority's application of R. 2:10-2. In choosing not to disturb this judgment, the majority *389 predominantly relies upon Walder, Sondak, Berkeley & Brogan v. Lipari, 300 N.J.Super. 67, 692 A.2d 68 (App.Div.), certif. denied, 151 N.J. 77, 697 A.2d 548 (1997).
Walder is essentially identical to the case at hand (except in one highly relevant respect[2]). In Walder we held that appellant's failure to object to the trial judge's jury instruction that a verdict could be based upon a three-fourths majority required the following R. 2:10-2 analysis:
Under these circumstances, we do not agree with defendants' belated objection. To do so would condone a tactic of inducing error, awaiting the outcome, and then raising the issue on appeal when the outcome is unfavorable. We find no plain error to justify reversal.
[Id. at 82, 692 A.2d 68.]
My colleagues have concluded that the "reasoning of Walder is sound," and that the trial judge's instruction that the agreement of three-fourths of the jury would be sufficient was not capable of producing an unjust result.
First, I believe the application of R. 2:10-2 militates in favor of reversal. This rule permits our disregarding of an "error or omission" unless it is "of such a nature as to have been clearly capable of producing an unjust result." There is no doubt that the trial judge's authorization of a three-fourths majority for a verdict was erroneous; no one suggests otherwise. In addition, this error was not only "clearly capable of producing an unjust result," it in fact demonstrably produced an unjust result because it produced a verdict on the agreement of less than five-sixths of the jurya verdict wholly inconsistent with the constitution's requirement for a civil jury verdict. Indeed, the verdict is inconsistent with the requirement of N.J.S.A. 2B:23-17 that a verdict of less than five-sixths requires the stipulation of the partiesa condition which unquestionably was not met here.
By stating that this error did not clearly have the capacity to produce an unjust result, the majority would appear to assume that the same verdict would have been rendered by seven of the eight jurors if they had been properly instructed. I am not prepared to make that leap of faith. We have no way of knowing whether the influence of one or two, or both, of the dissenting jurors might ultimately have persuaded the majority to proceed in a different direction or whether a five-sixths majority would ever be obtained. An assumption that the same result would have been rendered if the jury was properly instructed, I respectfully suggest, misconceives and diminishes the impact that any particular, individual juror may have on the entire deliberating body. See Panko v. Flintkote, 7 N.J. 55, 62, 80 A.2d 302 (1951) ("[I]t is impossible to say what influence the argument and personality of that juror ... may have exerted upon his fellow jurors during their deliberations."). Accordingly, I disagree with the majority's holding that this error was not clearly capable of producing an unjust result.
R. 2:10-2 also permits us, "in the interest of justice," to "notice plain error not brought to the attention" of the trial court. The majority concludes that we should exercise our discretion and choose not to notice the trial judge's obvious error. Because the trial judge's error went directly to the structure upon which trials are conducted in this State, I would view the error as a very poor candidate for such a plain *390 error analysis. We have previously held that structural errors in the conduct of a trial require reversal notwithstanding a showing of prejudice or a demonstration that the error had the capacity to produce an unjust result, as a review of a few recent cases reveals. State v. Brown, 362 N.J.Super. 180, 189, 827 A.2d 346 (App.Div.2003) (readback of testimony in the absence of defendant contrary to R. 3:16(b) required reversal absent a showing of prejudice); State v. Thomas, 362 N.J.Super. 229, 244, 827 A.2d 1087 (App.Div.2003) (an erroneous denial of the right of self-representation constitutes a structural defect mandating reversal); State v. Cuccio, 350 N.J.Super. 248, 258-69, 794 A.2d 880 (App.Div.) (public barred from the courtroom during jury selection without compelling justification constituted a violation of defendant's right to a public trial mandating reversal), certif. denied, 174 N.J. 43, 803 A.2d 638 (2002). While most decisions requiring automatic reversal for unnoticed structural defects are to be found in criminal cases, I fail to see the justification for a less vigorous view of such errors in our review of civil judgments. Indeed, prior case law does not suggest the application of a more languid approach to structural defects in civil cases. See Wright v. Bernstein, 23 N.J. 284, 296, 129 A.2d 19 (1957) (the trial court failed to grant a mistrial when it was learned that a juror had given a false answer during voir dire; reversal was required not because of any attempt to ascertain whether the juror's presence on the jury had the capability of producing an unjust verdict but because such remedy was "essential to the future operation of the jury system."); Panko, supra, 7 N.J. at 62, 80 A.2d 302 (reversal required where the jury was influenced by extraneous matters, even though the effect was unknown, "in order that there may be confidence in trial by jury.").[3]
An unnoticed error should not remain unnoticed on appeal and should require reversal, even in the absence of prejudice, when a fundamental right such as the rendering of a verdict in a constitutional manner is put at risk. Our discretion to decline to notice plain error should not be exercised where the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936), quoted with approval in United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776, 123 L. Ed.2d 508, 521 (1993) and United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L. Ed.2d 1 (1985). Accord Wright, supra, 23 N.J. at 296, 129 A.2d 19; *391 State v. Dishon, 297 N.J.Super. 254, 271, 687 A.2d 1074 (App.Div.1997); State v. Wagner, 180 N.J.Super. 564, 566-68, 435 A.2d 1190 (App.Div.1981).
The majority holds that conformity with Walder's plain error analysis is required by Morin v. Becker, supra. While it is true that Morin concluded that counsel's silence in the trial court supported a waiver of its criticism of the verdict on appeal, the Court also held that the validity of N.J.S.A. 2A:80-2 was "of such vital importance to the public" that it would "proceed to consider the questions raised by the defendant as to its constitutionality." 6 N.J. at 461, 79 A.2d 29. As part of our obligation to insure that future civil trials occur in a constitutional manner, I also believe, as Morin held, that we should not decline, on procedural grounds, to examine the legitimacy of this verdict.
Reversing this judgment and requiring a new trial is a small price to pay for the salutary effect such a decision may have on deterring future similar errors.

III
I also dissent because I am convinced the reversal of this judgment is dictated by the 1998 amendment of R. 1:8-2. The Supreme Court amended the rule for the very purpose of "resolv[ing] the problem raised by" Walder. Pressler, Current N.J. Court Rules, comment 4 on R. 1:8-2 (2004). I believe that by amending R. 1:8-2(c), the Supreme Court intended that we give literal application to the rule which nowbecause of Walderunambiguously states

If the parties have agreed on the record to more than six jurors pursuant to paragraph (b)(3) of this rule, the verdict or finding shall be by agreement of five-sixths of the deliberating jurors, unless the parties have otherwise agreed on the record prior to commencement of deliberations.
[R. 1:8-2(c)(3) (emphasis added).]
While, for the reasons set forth in section I of this opinion, I would view a three-fourths majority verdict even when authorized by the parties' affirmative and unambiguous consent to be constitutionally infirm, the trial judge's authorization of a three-fourths verdict is deficient since it was permitted in the absence of the parties' agreement "on the record." The verdict, thus, plainly violates R. 1:8-2.
The rule was previously worded so as to require a five-sixths verdict in these circumstances "unless the parties stipulate that a verdict or finding by a smaller majority of the jurors shall be taken as the verdict or finding of the jury." In Walder, as here, the trial judge instructed the jury of eight that an agreement of any six would be sufficient. After the charge, the trial judge asked counsel if they had any objections and both said they had none, which we held to mean that the parties "inferentially agree[d]" to the judge's instructions. Walder, supra, 300 N.J.Super. at 81, 692 A.2d 68. Based upon the agreement found in counsel's silence, the judgment based upon a three-fourths majority of the jury members was affirmed. Ibid.
The Walder decision compelled the 1998 amendment to R. 1:8-2(c) which resulted in the removal of the "stipulation" language, replacing it with a requirement that a verdict of less than five-sixths of the jury members would be acceptable so long as the parties "agree on the record." I can see no reason for this alteration of the rule unless the Supreme Court, through its rulemaking authority, intended to eviscerate any future findings, such as found in Walder, of "implied stipulations" generated by the silence of counsel. Indeed, subsequent to this rule amendment, the Supreme Court held what number of jurors *392 are required to render a verdict when more than six are permitted to deliberate:
... the court permitted eight people to deliberate in the jury room, and all parties agreed to accept a verdict from that eight-person jury. One juror was unable to complete her service, so the final verdict was rendered by seven jurors. There was no agreement among the parties that there should be a verdict percentage greater or less than five-sixths. Accordingly, when the jury was reduced to seven jurors, a valid verdict for the petitioner required six votes.
[Mahoney v. Podolnick, 168 N.J. 202, 216, 773 A.2d 1102 (2001) (emphasis added).]
The record in this case, as the majority recognizes, is bereft of any agreement to a verdict of less than five-sixths of the deliberating jurors. If the 1998 amendment was intended to avoid verdicts on less than a five-sixths majority in the absence of the parties' agreement "on the record," then the rule must be applied so as to require a reversal in this case.[4] By finding the failure of counsel to object at trial to be of overriding importance, the majority's decision revives Walder and negates the Supreme Court's intent in amending R. 1:8-2(c) to "resolve" the Walder "problem."
For these reasons I would reverse, and therefore dissent from the majority's opinion.
NOTES
[1] I agree with my colleagues that plaintiff's remaining arguments are without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).
[2] The one difference is that R. 1:8-2(c) was amended in 1998 to resolve the problem created by Walder. See section III, below.
[3] Walder also held that the appellant, by not objecting to the trial judge's authorization of a 6-2 verdict, had "induced" the error of which he later complained. My review of the record in this action does not suggest that counsel "induced" the trial judge's error, and it is observed that the majority, in quoting at length from Walder, has omitted Walder's holding that the appellant there had induced error, thus silently disapproving of such an approach. I agree that the appellant's silence here should not be equated with the "inducing" of error. This doctrine is normally applied where a party has "request[ed] the trial court to take a certain course of action, and upon adoption by the court, take[s] his chance on the outcome of the trial, and if unfavorable then condemn[s] the very procedure he sought and urged, claiming it to be error and prejudicial." State v. Marshall, 123 N.J. 1, 93, 586 A.2d 85 (1991), cert. denied sub nom., Marshall v. New Jersey, 507 U.S. 929, 113 S.Ct. 1306, 122 L.Ed.2d 694 (1993), quoting State v. Pontery, 19 N.J. 457, 471, 117 A.2d 473 (1955). The record does not suggest that counsel participated in or had notice of the trial judge's course of action. While I share any consternation over the silence of counsel in the face of this erroneous jury instruction, because the trial judge unilaterally pursued the deficient process it cannot be said that counsel "induced" this error. I agree with the majority's apparent rejection of that aspect of Walder's holding.
[4] I would lastly note that it would appear from the trial judge's opinion denying a new trial that an objection prior to deliberations would have made no difference. The judge's comments indicate his resolute preference for allowing all alternates to deliberate. Indeed, when the fallacy of the three-fourths verdict was raised in the motion for a new trial, the trial judge remained focused on his authority to allow eight jurors to deliberate and, as a result, never ruled on the more important objection to the verdictthat it had only the consent of three-fourths of the jury.