180 N.J. Super. 564 (1981)
435 A.2d 1190
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RICHARD AND MARGARET WAGNER, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted September 22, 1981.
Decided October 2, 1981.
*565 Before Judges MICHELS, McELROY and COLEMAN.
Stanley C. VanNess, Public Defender, attorney for appellants (Mark D. Sperber, Assistant Deputy Public Defender, of counsel and on the brief).
James R. Zazzali, Attorney General of New Jersey, attorney for respondent (Ruth Schlesinger Sherman, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by COLEMAN, J.A.D.
*566 This case raises two issues: (1) Can the statute (N.J.S.A. 2A:74-1) that designates the manner for impanelling a jury in a criminal case be ignored when selecting a jury, and (2) Can a trial judge amend the indictment to charge a new offense? Since we hold that the answer to both questions is in the negative, the convictions of defendants are reversed.
The facts essential to this appeal are not in dispute. In a joint trial before a jury both defendants were found guilty of receiving stolen property (N.J.S.A. 2A:139-1). Richard Wagner was sentenced to the Cumberland County Jail for a term of nine months. The judge suspended one month of this term and ordered that defendant be placed on probation for a period of two years following his release. Margaret Wagner was sentenced to the Cumberland County Jail for a suspended term of six months and placed on probation for a period of two years.
The irregularities in the jury selection process commenced when the jury panel first entered the courtroom. The first 14 jurors to enter the courtroom from the holding room were directed to take seats in the jury box. As jurors were challenged and excused following questioning, the judge replaced them by calling upon other jurors seated in various rows in the courtroom by starting at one point in the courtroom "and going right down the row." Defendants did not voice any objection to the jury selection process until sentencing day, when they moved for a new trial on this basis. The judge denied the motion, noting that although there was a technical noncompliance with the provisions of N.J.S.A. 2A:74-1, a process of random selection had nonetheless been utilized and therefore the ultimate intent of the statute had not been violated.
Defendants contend that the trial judge committed error in denying their motion for a new trial which was based on irregularities in the jury selection process.
N.J.S.A. 2A:74-1 outlines the procedure for selection of a petit jury in the following manner:

*567 The name of each person summoned and returned by a sheriff or other proper officer as a petit juror shall be written or printed on separate pieces of paper of as nearly as possible uniform size, color and shape. The sheriff or other proper officer or the clerk of the court, or a person designated by the sheriff, officer or clerk for that purpose, shall roll up each piece of paper separately and deposit it in a box.
When a jury is required for the trial of a cause, either civil or criminal, the box in which the names have been placed shall be shaken so as to intermix thoroughly the pieces of paper therein, and the sheriff, clerk or other person shall, by direction of the court, publicly and in open court, draw from the box, one at a time, the pieces of paper therein, until 12 persons ... whose names are found written thereon, shall appear. If any of the 12 persons so appearing are successfully challenged or excused from serving on that jury, the drawing shall be continued until 12 persons ... not so challenged or excused appear, and they, being severally sworn, shall constitute the jury for the trial of such cause. [Emphasis supplied]
It is vital that juries be selected in a manner wholly free from taint and suspicion. To that end the pertinent practice safeguards in the statute must be carefully observed. There are times, even in the absence of prejudice to a defendant, when it is essential to insure future observance of a prescribed practice safeguard or the vindication of a fundamental principle that courts should not hesitate to reverse. In Meszaros v. Gransamer, 23 N.J. 179 (1957), our Supreme Court observed:
In this day there should be ready recognition of the absence of justification for such new trial except in the unusual instance where it is really essential to insure future observance of a prescribed practice safeguard or the vindication of a fundamental principle. [At 189]
While it is true defense counsel did not object to the jury selection procedure, it must be emphasized that the chief responsibility for conducting jury selection rests with the trial judge. State v. Manley, 54 N.J. 259 (1969). It is also true that defendants have been unable to demonstrate prejudice stemming from the jury selection procedure. When the integrity of the process is at stake, prejudice is not a precondition to successfully asserting impairment of the fundamental right of proper jury selection. See State v. Czachor, 82 N.J. 392, 404 (1980). Jury selection is an integral part of the process to which every criminal defendant is entitled. State v. Singletary, 80 N.J. 55, 62 (1979); State v. McCombs, 81 N.J. 373, 375 (1979). Thus, we *568 conclude that the denial of the motion for a new trial was a miscarriage of justice under the law. R. 2:10-1. The error impacted upon the sensitive process of jury selection and cannot be condoned. A reversal is required to insure proper observance of the statutory procedure for selecting a jury. Also, the right to have a properly selected jury is so fundamental that a reversal is required to vindicate any infringement of that right.
Defendant Richard Wagner contends that the trial judge committed error by amending the indictment to include him in the charge of receiving stolen property, even though defense counsel orally waived defendant's right to a new indictment. We agree.
Art. 1, § 8, of the New Jersey Constitution provides that "[n]o person shall be held to answer for a criminal offense unless on the presentment or indictment of a grand jury." R. 3:7-4 permits an amendment of an indictment "to correct an error in form or the description of the crime ... or to charge a lesser included offense," but an amendment to charge a different offense is not allowed by the rule. A defendant may waive his right to indictment and elect to proceed by means of an accusation. However, such a waiver must be in a writing, signed by defendant, and the prosecutor must thereafter prepare a written accusation. See R. 3:7-2. Neither a written waiver nor an accusation was prepared in the instant matter. We are therefore satisfied that defendant's conviction of an offense for which he was not charged and which is not a lesser included offense of the conspiracy charge designated in the indictment cannot stand. See State v. Koch, 161 N.J. Super. 63, 66-67 (App.Div. 1978); State v. Reid, 148 N.J. Super. 263, 266 (App.Div. 1977), certif. den. 75 N.J. 520 (1977). The amendment deprived defendant of the due process and fundamental fairness inherent in our criminal justice system.
Finally, defendants argue that the trial judge erred in his application of the attorney-client privilege to exclude the testimony of the attorney of a co-indictee. We have carefully *569 considered this contention and find it to be clearly without merit. R. 2:11-3(e)(2).
The judgments of conviction for both defendants are reversed. The matter is remanded for a new trial as to Margaret Wagner. We do not retain jurisdiction.