198 N.J. Super. 575 (1985)
487 A.2d 1290
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JUAN RAMOS FLORENTINO ARRIAGAS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 18, 1984.
Decided February 6, 1985.
*578 Before Judges PRESSLER, BRODY and HAVEY.
Joseph H. Rodriguez, Public Defender, attorney for appellant (Lowell Espey, Designated Counsel, of counsel and on the brief).
Joseph A. Falcone, Passaic County Prosecutor, attorney for respondent (Steven E. Braun, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
Appellant and a co-defendant, Francisco Ruiz, were indicted for the murder and first degree robbery of Raymond Torres. The murder count charged the defendants with knowingly causing Torres's death "and/or" causing his death in the course of a robbery. The robbery count charged that the defendants were armed with a knife. Ruiz was never apprehended. A jury found appellant guilty of felony murder and first degree robbery. Pursuant to the trial judge's instructions, the jury, having found appellant guilty of felony murder, did not consider whether he was also guilty of purposely or knowingly killing Torres.[1] The judge imposed consecutive prison *579 sentences: 50 years for the murder with 25 years of parole ineligibility and 20 years for the robbery.
We agree with appellant that it was plain error for the judge to have sentenced him for armed robbery. That offense necessarily merged with felony murder. See State v. Rodriguez, 97 N.J. 263 (1984); State v. Hubbard, 123 N.J. Super. 345, 352 (App.Div. 1973), certif. den., 63 N.J. 325 (1973). By keeping the jury from finding appellant guilty of purposeful or knowing murder, the judge lost the opportunity of imposing a separate sentence for robbery.
The operative facts as presented by the State differed fundamentally from those presented by appellant. According to the State, Torres left a neighborhood tavern when it closed at 3:00 a.m. He was inebriated but able to make his way home on foot. Along the way he was set upon by the defendants who assaulted and robbed him. They left Torres when Nicholas Santana Castro (Santana) came by. Torres, who was on the ground disabled by the beating, told Santana he had just been robbed. Santana crossed the street to a public telephone and called the police. Meanwhile, the defendants returned to Torres and stabbed him to death so that he could not identify them.
Appellant testified that he had been visiting Ruiz, Ruiz's brother, and three other Mexican men who lived in an apartment overlooking the place where Torres was killed. Shortly after leaving the apartment to walk together to appellant's home, appellant and Ruiz were accosted by Torres. Torres shouted ethnic slurs and obscenities at them and kicked appellant. Appellant responded by knocking Torres to the ground. Torres got up but before the fight could resume, Ruiz pushed appellant aside and stabbed Torres to death. Appellant claimed he was unaware that Ruiz had been carrying a knife. This *580 version of events was corroborated by the four Mexican men who testified that they were looking out of their apartment window at the time. Their testimony was seriously undercut, however, by prior inconsistent statements each had given the police.
If the jury accepted all the State's evidence, they could have found appellant guilty of first degree armed robbery and purposeful murder committed after the robbery to silence the victim. On the other hand, if the jury accepted all of appellant's evidence, they could have found him guilty of at most a simple assault. As the trial judge viewed it, if the jury found that appellant committed the robbery and participated in the homicide he would be guilty of robbery and felony murder and his guilt of purposeful or knowing murder would be superfluous; if the jury found that he did not commit robbery but did participate in the homicide, he would be guilty only of purposeful or knowing murder. He therefore instructed the jury to consider purposeful or knowing murder only if they found appellant not guilty of robbery.
Like many other crimes, murder is defined in the Code by alternative sets of elements. A homicide is a murder when caused purposely, when caused knowingly, or "when the actor ... is engaged in the commission of ... or flight after committing ... [any of several crimes including robbery], and in the course of such crime or of immediate flight therefrom, any person causes the death of a person other than one of the participants...." N.J.S.A. 2C:11-3(a)(1), (2), and (3). The last set of elements is commonly called "felony murder." The manner in which a particular crime is committed may include two or more sets of elements that define the crime. Thus an intentional homicide committed in the course of or immediate flight from the commission of a "felony" would constitute both a purposeful murder and a felony murder.
When evidence of more than one set of elements could support a guilty verdict for the same crime, the trial judge *581 should think twice before limiting the jury to a single guilty verdict for the crime. In the present case the jury was told that it need not consider purposeful murder if it found appellant guilty of felony murder. This produced verdicts of guilty of felony murder and the underlying felony. These crimes merge. Had the judge instructed the jury that they need not consider felony murder if they found appellant guilty of purposeful murder, merger would not have been required if they had returned verdicts of guilty of purposeful murder and robbery. State v. Stenson, 174 N.J. Super. 402 (Law Div. 1980), aff'd o.b., 188 N.J. Super. 361 (App.Div. 1982), certif. den., 93 N.J. 268 (1983).
It would also have been a mistake, however, to instruct the jury not to consider felony murder if they found appellant guilty of purposeful murder. As will appear hereafter, had the jury not found appellant guilty of felony murder, we would have had to order a new trial because of an error associated only with the purposeful murder charge.
Thus, the safest course for a trial judge to take where there is evidence to prove a crime by more than one set of elements is to have the jury return a verdict on each set.[2] That way the judge maximizes his sentencing options where there may be guilty verdicts of related crimes, and minimizes the chance of reversal where there is trial error relating to only one of a number of sets of elements that could define the crime.
A second point raised by appellant requires some discussion. He contends that the judge erred in refusing to charge manslaughter. A "[c]riminal homicide constitutes manslaughter *582 when ... [a] homicide which would otherwise be murder ... is committed in the heat of passion resulting from a reasonable provocation." N.J.S.A. 2C:11-4(b)(2). The judge denied the request to charge manslaughter because the scenarios presented by the parties left no room for the jury to find that the homicide was committed by appellant in the heat of passion resulting from a reasonable provocation. According to the State, the homicide resulted from appellant's desire to silence a witness; according to appellant, he took no part in the homicide.
When requested to do so, a trial judge must charge manslaughter in a murder case "if there is evidence which, if believed by the jury, would reduce the crime to voluntary manslaughter." State v. Powell, 84 N.J. 305, 317 (1980); see State v. Choice, 98 N.J. 295, 298 (1985). In Powell the defense was alibi. Powell therefore did not offer evidence of the mitigating elements of provocation/passion manslaughter nor, as a practical matter, could his attorney comfortably ask the jury to accept alternatively a manslaughter scenario. Powell was not thereby barred, however, from requesting a manslaughter charge and, when he did, the judge was required to deliver the charge because there was a plausible manslaughter scenario in the evidence.[3]State v. Powell, 84 N.J. at 317-318. Appellant was in much the same position as Powell. His posture before the jury was that Ruiz, acting alone, killed *583 Torres. Appellant is not thereby barred from requesting a manslaughter charge based on the evidence that he intended to kill Torres out of a passion reasonably provoked by Torres's assaultive conduct, ethnic slurs and obscenities. The judge erred in not giving the charge.
The error, however, was harmless. By its verdict the jury found that the homicide was murder because it was committed in the course of a robbery. The "intent" necessary to commit this felony murder was a purpose to deprive Torres of his property. N.J.S.A. 2C:15-1 and 20-3. Provocation/passion manslaughter is available to a defendant who kills out of a sudden rush of blind passion to harm a person physically who is causing overwhelming emotional pain. See State v. Bonano, 59 N.J. 515, 523 (1971). Reducing murder to manslaughter in these circumstances has been justified as "a fair concession to the frailties of man." State v. Williams, 29 N.J. 27, 42-43 (1959). Those frailties of human nature do not include being overwhelmed by a passion to rob the person who has caused the pain. Provocation/passion manslaughter is not available to reduce a robber's accountability for murder when someone is killed in the course of or immediate flight from the robbery.
Appellant's remaining two points are clearly without merit. He complains for the first time on appeal that the assistant prosecutor's attack in his summation on the credibility of the Mexican witnesses was based on a supposed fact not supported by evidence in the record. The assistant prosecutor suggested that these witnesses departed from their earlier statements and conformed their testimony to appellant's with the aid of an individual who was seated in the court room during the trial. There was evidence, however, that that person chauffeured at least two of these witnesses to court and was in a position to recount the content of trial testimony to each of them.
*584 Finally, appellant contends that the imposition of an extended prison term for murder was not justified in this case. At the time of sentencing, the Code permitted a judge sentencing for murder to impose a prison sentence having a term ranging from 10 years to life imprisonment with a 25-year limit on the usual periods of parole ineligibility. L. 1978, c. 95; see State v. Maguire, 84 N.J. 508, 523 (1980). The upper end of this range was an extended term of from 30 years to life. Ibid. When sentencing a murderer to an extended term, a judge was not required to make the findings for an enhanced sentence called for by N.J.S.A. 2C:44-3. Instead the Code, as interpreted by the Maguire Court, required only that the judge "carefully evaluate the aggravating and mitigating factors in section 2C:44-1." The judge here followed the strictures of the Code when he stated that he was imposing an aggregate sentence of 70 years with 25 years of parole ineligibility because of the cruel and callous manner in which appellant robbed and killed Torres.
The murder conviction is affirmed. The sentence, however, is vacated and the matter is remanded for resentencing after merging the first degree robbery with the murder. The new sentence may not exceed the aggregate sentence originally imposed for these crimes. State v. Rodriguez, 97 N.J. 263, 277 (1984).
NOTES
[1] Without objection, the judge instructed the jury that it may have to consider whether appellant purposely or knowingly killed Torres even though the indictment does not charge "purposely." This error, not raised in the appeal, was harmless because the jury did not return a verdict as to purposeful or knowing murder. For discussion only, we will assume that appellant was indicted for purposeful, knowing and felony murder.
[2] To avoid confusion, a judge should assign each set of elements a descriptive label related to a distinguishing element. Here, for instance, the judge properly referred to "purposeful murder," "knowing murder," and "felony murder" even though the Code labels all three simply "murder."
[3] R. 1:8-7 requires that a request to charge be made "[a]t or before the commencement of the trial, or thereafter but before the close of the evidence as to issues not anticipated prior to trial...." Where, as here, a defendant requests a manslaughter charge after the close of evidence, the State may be genuinely caught by surprise. If the judge finds that there was surprise and that the State should be given an opportunity to present evidence on the issue, the judge may condition his giving the charge on the defendant's consent to reopen the trial to receive evidence relevant to manslaughter. See State v. Choice, 98 N.J. at 300.