199 N.J. Super. 241 (1985)
488 A.2d 1098
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM GRUNOW, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 4, 1984.
Decided March 6, 1985.
*244 Before Judges PRESSLER, BRODY and HAVEY.
John J. Barry argued the cause for appellant (Wolff & Samson, attorneys; John J. Barry, Joseph A. Hayden, John P. McDonald and Michael J. Rogers, on the brief).
*245 Boris Moczula, Deputy Attorney General, argued the cause for respondent (Michael R. Cole, Acting Attorney General of New Jersey, attorney; Boris Moczula on the brief).
The opinion of the court was delivered by BRODY, J.A.D.
Indicted for murder, defendant was acquitted of that crime but found guilty by a jury of aggravated manslaughter. He was sentenced to 20 years of imprisonment, 10 years to be served before parole eligibility. In charging the jury, the judge erroneously placed upon defendant the burden of proving that he was acting under the stress of reasonable provocation sufficient to reduce murder to provocation/passion manslaughter. The State contends that the error was harmless. We disagree and remand for a new trial thereby rendering moot numerous other issues presented on this appeal.
At the heart of the matter factually was the inconstancy of the victim's wife. In 1977 she was defendant's secretary and mistress. In 1980 she took up residence with the victim. Thereafter she alternated, spending several months with one man and then several with the other. She finally married the victim about two months before defendant bludgeoned him to death. According to defendant, shortly after the wedding he resumed having sexual relations with her. There is no dispute that they were together for lunch at his home on the day of the homicide.
Later that day defendant and the victim met. The victim did not survive the encounter. The facts leading to the homicide were very much in dispute. For our purposes it is enough to know that without objection the judge permitted the jury to consider whether defendant was guilty of purposeful murder, knowing murder, aggravated manslaughter, reckless manslaughter or provocation/passion manslaughter. The jury was also instructed to consider whether defendant acted in self-defense.
*246 With respect to the provocation/passion manslaughter portion of the charge, the judge instructed the jury in part as follows:
Now, the second type of manslaughter is criminal homicide which would otherwise be murder except that it was committed in the heat of passion resulting from a reasonable provocation.
....
... The provocation must be so gross as to cause the ordinary reasonable man to lose his self control and use violence with fatal results and you must be satisfied beyond a reasonable doubt that the defendant was in fact deprived of his self control and under the stress of the provocation that confronted him and that he committed the crime while so deprived.
Six hours into their deliberations, the jury asked the judge to define the crimes with which defendant was charged and to explain the defense of self-defense. The judge repeated his original charge verbatim.
After the jury was excused to resume their deliberations, defendant's attorney objected that the quoted language "would operate to suggest that the burden of proof is upon the defendant to indicate and to show beyond a reasonable doubt that he was deprived of his self control." The judge responded that the charge "was taken from the model charge ... and I think the language does not in any way suggest that the burden is upon the defendant to prove anything." In fact the judge departed from the language of the model jury charge and incorrectly instructed the jury that in order to convict defendant of provocation/passion manslaughter they must be convinced beyond a reasonable doubt that he was acting under the stress of reasonable provocation.
"Criminal homicide constitutes manslaughter when ... [a] homicide which would otherwise be murder ... is committed in the heat of passion resulting from a reasonable provocation." N.J.S.A. 2C:11-4(b)(2). When there is evidence of these mitigating facts the judge must charge the jury that it is the State's burden to prove that the defendant did not act in the heat of passion on reasonable provocation. See State v. *247 Powell, 84 N.J. 305, 315 & n. 10 (1980). If the jury in such a case is convinced beyond a reasonable doubt that the elements of murder have been proved, but have a reasonable doubt as to whether the defendant acted under the stress of reasonable provocation, they must acquit the defendant of murder and, assuming no defense prevails, find him guilty of provocation/passion manslaughter.
Although the model jury charge does not expressly refer to the burden of proof, it correctly states the rule:
... If you are satisfied beyond a reasonable doubt that the defendant knowingly or purposely caused the victim's death, but you have a reasonable doubt as to whether he did so in the heat of passion upon a reasonable provocation, then you must find the defendant guilty of manslaughter.
By preventing the jury from finding defendant guilty of provocation/passion manslaughter unless they were convinced beyond a reasonable doubt that defendant was acting under the stress of reasonable provocation, the judge deprived defendant of a full opportunity to be found guilty of second-degree manslaughter instead of first-degree aggravated manslaughter.
Confusion in placing the burden of proof may have arisen because the model jury charge does not expressly place the burden on the State to negate the provocation/passion elements of manslaughter and because the presence of those elements is correctly perceived to benefit the defendant. Where a defendant is being tried for a more serious crime the availability of a provocation/passion manslaughter verdict gives him a chance to avoid a guilty verdict for the crime charged even though all the elements of that crime have been established. In such a case the State has the burden of proving beyond a reasonable doubt that the defendant was not reasonably provoked to passion if it expects to prove that his conduct constituted the more serious offense. Where provocation/passion manslaughter is the most serious crime charged, the State necessarily concedes that the defendant was reasonably provoked to homicidal passion.
*248 Thus where provocation/passion manslaughter is a means of reducing culpability for a more serious offense, the State must disprove its mitigating elements; but where provocation/passion manslaughter is the most serious offense charged, the State necessarily concedes those elements. In neither case does the defendant have the burden of proving that he acted under the stress of reasonable provocation.
The State argues that the error was harmless. It contends that by acquitting defendant of murder, the jury could not then have found him guilty of provocation/passion manslaughter because, in keeping with N.J.S.A. 2C:11-4(b)(2), the trial judge charged the jury that provocation/passion manslaughter is available only where the homicide "would otherwise be murder."
Accepting the State's invitation to sail the uncertain seas of speculation upon the reasons for a jury's acquittal, we come to a different shore. We must assume that the jury followed the trial judge's erroneous charge and ruled out provocation/passion manslaughter because they were not convinced beyond a reasonable doubt that defendant acted under the stress of reasonable provocation in committing what would otherwise be a purposeful or knowing murder. This left the jury a choice of finding defendant guilty of murder or first-degree aggravated manslaughter. Again favoring defendant with our assumptions, we must further assume that the jury shrank from returning a murder verdict not because the elements of that crime were missing but because of lenity based on a belief that defendant was probably reasonably provoked to a passion to kill. Had they been properly instructed, a jury of that mind would have found defendant guilty of second-degree provocation/passion manslaughter.
The State insists that we cannot assume that a jury, having found the elements of murder, would have found defendant guilty of anything but murder. Therefore, argues the State, the jury must have rejected a murder verdict on the *249 evidence and so never considered the erroneous instruction regarding the crime of provocation/passion manslaughter. There are two answers to the point. First, as a general rule it has long been accepted that a jury may acquit through lenity though satisfied that the State proved the elements of the crime. It is for this reason that a defendant is generally denied a new trial despite inconsistent acquittal and guilty verdicts. United States v. Powell, ___ U.S. ___, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984); Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); Annotation, "Inconsistency of criminal verdict as between different counts of indictment or information," 18 A.L.R.3d 259, 294-295 (1968). Second, the trial judge below erroneously instructed the jury that the elements of knowing murder and aggravated manslaughter are essentially the same.[1] Thus the jury's choice of aggravated manslaughter over murder can only be explained by lenity.
The trial judge's erroneous instruction which misplaced the burden of proof on defendant had the clear capacity to lead the jury to a wrong verdict. We must therefore reverse and *250 remand for a new trial. R. 2:10-2. The new trial, however, presents a special problem. Defendant cannot be put in jeopardy again for murder because the jury acquitted him of that charge. Does that mean that he will be exposed to a conviction of first-degree aggravated manslaughter with no opportunity to reduce that crime to second-degree provocation/passion manslaughter? We think not despite the language of N.J.S.A. 2C:11-4(b)(2) which defines provocation/passion manslaughter as a "homicide which would otherwise be murder."
Purposeful murder, knowing murder, aggravated manslaughter and reckless manslaughter are criminal homicides that lie on a descending scale of culpability. Each requires that the actor be aware that his conduct at least poses a risk to the victim of death or serious bodily injury resulting in death. To be guilty of purposeful murder the actor must have death or serious bodily injury as his conscious object. N.J.S.A. 2C:11-3(a)(1); 2C:2-2(b)(1). To be guilty of the other criminal homicides, the actor's awareness of the risk suffices: for knowing murder he must be aware that death or serious bodily injury is practically certain, N.J.S.A. 2C:11-3(a)(2); 2C:2-2(b)(2); for aggravated manslaughter that death is probable, and for reckless manslaughter that death is possible. State v. Curtis, 195 N.J. Super. 354, 364 (App.Div. 1984), certif. den., 99 N.J. 212 (1984).
Section 2C:11-3 of the Criminal Law Revision Commission Report proposed that criminal homicide would constitute "murder" when:
(1) it is committed purposely; or
(2) it is committed knowingly; or
(3) it is committed recklessly under circumstances manifesting extreme indifference to the value of human life.
(4) [felony murder][2]
*251 The third category, which is the focus of our attention, codifies one of the definitions of "malice aforethought," the pre-Code mental state necessary to constitute murder:
Knowledge that the act which causes death will probably cause the death of, or grievous bodily harm to, some person, whether such person is the person actually killed or not, although such knowledge is accompanied by indifference whether death or grievous bodily harm is caused or not, or by a wish that it may not be caused.... [State v. Gardner, 51 N.J. 444, 458 (1968)]
As ultimately adopted by the Legislature, the Committee Report's third category of "murder" was lowered to first-degree aggravated manslaughter. N.J.S.A. 2C:11-4(a). It now reads:
Criminal homicide constitutes aggravated manslaughter when the actor recklessly causes death under circumstances manifesting extreme indifference to human life.
Under pre-Code law, the malice necessary to constitute murder could be dissipated by the mitigating elements of provocation/passion manslaughter. State v. Brown, 22 N.J. 405, 411 (1956). Section 2C:11-4(a)(2) of the Commission Report would reduce to provocation/passion manslaughter "a homicide which would otherwise be murder." N.J.S.A. 2C:11-4(b)(2) adopts that recommendation by providing that a "homicide which would otherwise be murder" may be reduced to second-degree provocation/passion manslaughter. Therefore when the Legislature lowered the Commission Report's third category of "murder" to first-degree aggravated manslaughter, it literally disqualified that crime from being reduced to provocation/passion manslaughter because it was no longer a "murder."
We are convinced that the Legislature did not intend such a result. It would be contrary to pre-Code law and lead to the absurd result that a defendant charged with murder would be eligible to have the crime reduced to second-degree provocation/passion manslaughter but a defendant charged with the lesser offense of first-degree aggravated manslaughter would not.
*252 Provocation/passion manslaughter is essentially an assaultive crime. It is available to a defendant "who kills out of a sudden rush of blind passion to harm a person physically who is causing overwhelming emotional pain." State v. Arriagas, 198 N.J. Super. 575, 583 (App.Div. 1985). See State v. Bonano, 59 N.J. 515, 523 (1971). Moving down the scale of culpability from purposeful murder to the descending levels of exposure to the risk of death, the crimes encompass a greater variety of criminal conduct which may not be specifically directed against the victim and therefore will not qualify for reduction to provocation/passion manslaughter. That does not mean, however, that provocation/passion manslaughter should not be available to someone who commits an assaultive aggravated manslaughter as charged here.
The Legislature's primary purpose in creating the crime of provocation/passion manslaughter was to reduce to a second-degree crime a homicidal assault by an actor in the grip of the mitigating elements of that crime. Murder and aggravated manslaughter are the only higher crimes that can, in a proper case, be so reduced. There is no reason other than oversight to explain why the Legislature lowered a category of criminal homicide from murder to aggravated manslaughter without retaining the mitigating alternative of provocation/passion manslaughter. We are bound to read a statute in a way that serves the obvious intent of the Legislature even though its language does not. In N.J. Builders, Owners and Managers Association v. Blair, 60 N.J. 330, 338 (1972), the Supreme Court said:
In reading and interpreting a statute, primary regard must be given to the fundamental purpose for which the legislation was enacted. Where a literal rendering will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter. This doctrine permeates our case law.
See also New Capitol Bar & Grill Corp. v. Div. of Employment Sec., 25 N.J. 155, 160 (1957).
*253 We therefore hold that in cases of assaultive criminal homicide N.J.S.A. 2C:11-4(b)(2) is available to reduce both murder under N.J.S.A. 2C:11-3 and aggravated manslaughter under N.J.S.A. 2C:11-4(a) to provocation/passion manslaughter.
Defendant contends that the trial judge exceeded his discretion in admitting into evidence the showing of a four-minute video tape depicting the recovery of the victim's body from a buried sealed metal barrel and admitting into evidence the barrel itself. These exhibits were offered to prove defendant's state of mind at the time of the killing. Defendant further contends that the judge erred in admitting into evidence a mannequin offered to aid the State in demonstrating the location of wounds on the victim's body. We cannot say that the trial judge abused the broad discretion he had in admitting these items into evidence despite their "emotional stirring" quality. State v. Thompson, 59 N.J. 396, 420-421 (1971). We note, however, that at the new trial the judge must make a fresh evaluation of the admissibility of this evidence. State v. Hale, 127 N.J. Super. 407, 413 (App.Div. 1974).
Reversed and remanded for a new trial.
NOTES
[1] The trial judge defined knowing murder to the jury as follows:

... A person who commits a killing does so knowingly when he is aware that what he is doing will cause death or serious bodily injury resulting in death or is practically certain to cause death or serious bodily injury resulting in death. [Emphasis added]
N.J.S.A. 2C:11-4(a) defines aggravated manslaughter as follows:
Criminal homicide constitutes aggravated manslaughter when the actor recklessly causes death under circumstances manifesting extreme indifference to human life.
After defining "recklessly" the judge explained "causes death under circumstances manifesting extreme indifference to human life" as follows:
... It means that the defendant acted with a conscious and callous disregard of human life and that he was aware that his conduct was practically certain to kill, he nonetheless conducted himself with no regard for that risk. [Emphasis added]
Instead of differentiating between knowing murder's risk of "practically certain" death and aggravated manslaughter's risk of "probability" of death, State v. Curtis, 195 N.J. Super. 354, 364 (App.Div. 1984), certif. den., 99 N.J. 212 (1984), the judge instructed the jury that the risk in both cases is the same.
[2] We omit from our discussion the crime of felony murder, N.J.S.A. 2C:11-3(a)(3), because the intent to commit one of the enumerated "felonies" is ordinarily not mitigated by provocation/passion. See State v. Arriagas, 198 N.J. Super. 575, 583 (App.Div. 1985).