—— A.2d ——

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
JOHN CIUFFREDA, DEFENDANT–RESPONDENT.

Argued September 24, 1991—Decided March 3, 1992.

*Jeffrey L. Weinstein,* Deputy Attorney General, argued the
cause for appellant (*Robert J. Del Tufo,* Attorney General of
New Jersey; attorney).

*Susan Herman,* Assistant Deputy Public Defender, argued the cause for respondent (*Wilfredo Caraballo,* Public Defender, attorney).

The opinion of the Court was delivered by

CLIFFORD, J.

In an unreported opinion, a divided panel of the Appellate Division entered a judgment of acquittal after reversing defendant's conviction for manslaughter under *N.J.S.A.* 2C:11–4b(2). That statute defines as a second-degree crime a homicide committed in the heat of passion resulting from reasonable provocation (hereinafter passion/provocation manslaughter). The dissenter below would have affirmed the conviction. The State appeals as of right under *Rule* 2:2–1(a)(2). The sole question that divided the court below, and hence the only issue before us on this appeal, *R.* 2:2–1(a)(2), is whether defendant consented to having the jury consider an offense for which the grand jury had not indicted him. The State's brief argues that "[t]he trial court's instruction charging passion/provocation manslaughter as a lesser included offense of aggravated manslaughter was not reversible error because defendant consented to the charge below and was not prejudiced." We agree, and therefore reverse the Appellate Division and reinstate the conviction.

I

The events giving rise to the criminal charge against defendant, John Ciuffreda, originated in an argument that defendant and his friends had with the victim, Michael Mugan, at a tavern. The record reveals a minor scuffle, a period of relative peace after the scuffle had subsided, then some name-calling, with the victim finally threatening that he would wait outside so that he could "kick [Ciuffreda's] ass." Defendant waited for between twenty and thirty minutes before leaving the tavern with his wife. Because Mugan was standing next to Ciuffreda's motorcycle, Ciuffreda sent his wife back into the bar to call the

police, whereupon the victim approached and reached for or grabbed defendant. The Appellate Division summarized the events thereafter as follows:

> [D]efendant struck his victim * * * in the head with a motorcycle helmet, once while they were standing confronting each other, a second time as Mugan was falling to the ground, and a third time while Mugan was on the ground on his hands and knees. While Mugan was on the ground, having trouble breathing, defendant, who was wearing boots, kicked him in the ribs and then in the eye. Police officers arrived at that point and intervened, but Mugan died as a result of his injuries. According to the testimony of the county medical examiner, his death was caused by severe brain contusions resulting from the blows to his head.

Defendant went to trial on a one-count indictment charging him with aggravated manslaughter contrary to *N.J.S.A.* 2C:11–4a, for having "recklessly cause[d] the death or serious bodily injury resulting in the death of Michael Mugan, under circumstances manifesting extreme indifference to the value of human life." Defendant claimed self-defense. The trial court instructed the jury not only on aggravated manslaughter, the first-degree offense for which defendant had been indicted, but also on reckless manslaughter (*N.J.S.A.* 2C:11–4b(1)) and passion/provocation manslaughter as lesser-included offenses of aggravated manslaughter. In submitting those latter charges to the jury the court relied on *State v. Powell,* 84 *N.J.* 305, 419 *A.*2d 406 (1980); *State v. Choice,* 98 *N.J.* 295, 486 *A.*2d 833 (1985); and *State v. Grunow,* 199 *N.J.Super.* 241, 488 *A.*2d 1098 (App.Div.1985). This Court's opinion in *Grunow,* reported at 102 *N.J.* 133, 506 *A.*2d 708 (1986), disagreeing with the Appellate Division's analysis of the case but nevertheless affirming that court's judgment, had not yet been handed down at the time Ciuffreda's case was tried—a significant circumstance, as we shall demonstrate.

The jury acquitted defendant of both aggravated manslaughter and reckless manslaughter but convicted him of passion/provocation manslaughter. The trial court sentenced defendant to ten years in prison with four years of parole ineligibility, imposed a fine of $7,500, and required defendant to pay $10,000 to the Violent Crimes Compensation Board.

On appeal to the Appellate Division defendant claimed that "the State failed to disprove [his] affirmative claim of self-defense beyond a reasonable doubt," and that the "$7,500 fine and the $10,000 Violent Crimes Penalty imposed * * * were manifestly excessive and an abuse of discretion." Because our opinion in *Grunow, supra,* 102 *N.J.* 133, 506 *A.*2d 708, had been published by then, the Appellate Division ordered the parties to file supplemental briefs addressing the propriety of the jury charge on passion/provocation manslaughter in light of that case.

In *Grunow* we held that aggravated manslaughter is not reduced to manslaughter when committed in the heat of passion resulting from reasonable provocation. The State therefore, in its supplemental brief to the Appellate Division, conceded that submission to the jury of the passion/provocation charge in this case had been improper as conflicting with that principle of law; but it contended that the Appellate Division should sustain the jury verdict because the defendant had, through his counsel, orally consented to the charge. Alternatively, the State argued that the Appellate Division should mold the jury verdict to one that found defendant guilty of aggravated assault. The Appellate Division concluded that the defendant had not consented to the charge of passion/provocation manslaughter, and refused to mold the jury verdict. Judge Deighan dissented on the "consent" issue.

## II

Article I, paragraph 8, of the New Jersey Constitution provides, "No person shall be held to answer for a criminal offense unless on the presentment or indictment of a grand jury." A defendant, however, may waive that right and agree to proceed without indictment. *R.* 3:7–2. To determine whether the State's failure to indict Ciuffreda for passion/provocation manslaughter warrants a reversal of his conviction for that offense, we must consider whether defendant orally consented to the

uninducted charge of passion/provocation manslaughter, and, if so, what the legal effect of that consent was.

Because that portion of the transcript on which the State relies as demonstrating defendant's consent to the passion/provocation manslaughter charge is central to the resolution of this appeal, we quote at length the colloquy between the court and counsel:

THE COURT: Is there anything else that is necessary, in addition to the normal introductory charge?

[DEFENSE COUNSEL]: I was wondering if the Court would note my objection to the provocation charge. It's my specific request that it not be given. I understand the status of the law.

THE COURT: All right. You understand my position with regard to that?

[DEFENSE COUNSEL]: Of course.

THE COURT: There seems to be enough here with regard to provocation under State vs. Powell, State vs. Choice, that it would be required that I give that charge. I understand your objection to it.

I understand, also, that the tenor of the charge talks about a knowingly or purposeful murder which it reduced to manslaughter because of heat of passion, reasonable provocation. Nevertheless, it seems to be a prima facie showing with regard to that statute.

The Prosecutor has requested that, and I feel I'm constrained to give it.

[DEFENSE COUNSEL]: Is the Court going to tell the jury that it was never a murder situation from the inception?

THE COURT: I'm going to tell the jury—I don't have my charge—

[DEFENSE COUNSEL]: I don't want the jury put in a position where they believe that the matter has already been compromised. I have a long standing feeling that when they hear something from the Court that they believe everything they hear.

THE COURT: I'm not sure that's true, but, in any event, I'm going to use the statute, itself, to define what provocation manslaughter is. And I point out to you that that statute reads, "Criminal homicide constitutes manslaughter when a homicide which would otherwise be murder under Section 2C:11–3 is committed in the heat of passion resulting from a reasonable provocation."

I'm not going to refer to the section, but, in substance—

[DEFENSE COUNSEL]: Is that all the Court's going to read?

THE COURT: No. I'm going to—

[DEFENSE COUNSEL]: Because I would be satisfied with that. I have no objection to that.

THE COURT: Fine. But, I have to go through what it is, what reasonable provocation is, what heat of passion is, what knowing and purposeful means and things like that.

[DEFENSE COUNSEL]: Yes, sir. Again from the preface of the definitions, utilizing those?

THE COURT: Yes.

[DEFENSE COUNSEL]: I have no problem with that. No objection to it.

THE COURT: All right.

[PROSECUTOR]: I understand that Court is to, and correct me if I'm wrong, please, as to provocation aspect, it is going to give what's in the model charge. And not just limit it to the words in the statute.

THE COURT: Yes. We're talking about what provocation is, what heat of passion means, what passion means, what heat means.

[PROSECUTOR]: Fine.

THE COURT: Of course. To give it without a definition is, I think, to violate what the requirements of 2C are, as much as not to define what purposeful or knowing conduct would be, or reckless conduct under the manslaughter aspect of aggravated or reckless.

So, I think that is a requirement.

Conceding that defense counsel initially objected to the passion/provocation manslaughter charge, the State argues that when the court confirmed that the charge would contain definitions of the statutory terms, defense counsel withdrew his objection and consented to the charge. According to the State, defense counsel based his initial objection on a concern that the jury would think that defendant had been charged with knowing and purposeful murder and that the court's charge on passion/provocation manslaughter carried with it the inference that defendant had already benefitted from some sort of compromise; but when the court explained the proposed charge, defense counsel stated that he was "satisfied" with the charge and had no objection.

Under defendant's interpretation of the colloquy, however, defense counsel never withdrew his initial objection to the charge of passion/provocation manslaughter. Defendant argues that when it became clear that the trial court intended to give that charge anyway, defense counsel's concerns shifted to the *language* of the charge. Defendant maintains that in light of the fact that the trial court intended to charge passion/provocation manslaughter despite defense counsel's objection, his "satisfaction" must be understood as relating only to the language proposed by the trial court, not to the charge itself.

We reject defendant's interpretation. The lines drawn are overly subtle and tangled. We read the colloquy only one way: although counsel initially resisted the charge, he withdrew his objection after the court's assurance that the charge would go well beyond a mere recitation of the words of the passion/provocation manslaughter statute and would in fact acquaint the jurors with the concepts of "heat of passion" and "reasonable provocation" (as indeed was the case, with neither side voicing any exception to the charge). Thus reassured, defense counsel approved of the charge and stated, "I would be satisfied with that. I have no objection to that." And then, to remove any doubt about his position, "I have no problem with that. No objection to it." We may safely assume that defendant wanted the passion/provocation manslaughter charge to afford the jury the opportunity to convict him of a second-degree crime rather than a first-degree crime. His oral consent to the charge is clear from the trial transcript, and his reason for giving that consent is equally clear.

The general rule, however, is that for a criminal defendant's waiver of his or her right to indictment to be effective, the waiver must be in writing and the prosecutor must thereafter file a written accusation before going to trial. *State v. Wagner*, 180 *N.J.Super.* 564, 568, 435 *A.*2d 1190 (App.Div.1981). In relevant part, *Rule* 3:7–2 codifies those requirements by providing:

> A crime punishable by death shall be prosecuted by indictment. Every other crime shall be prosecuted by indictment unless the defendant, after having been advised of his right to indictment, shall in writing signed by him waive such right, in which case he may be tried on accusation. Such accusation shall be prepared by the prosecuting attorney and entitled and proceeded upon in the Superior Court.

The primary purpose of the *Rule* is to establish that criminal defendants may waive their right to indictment. The Rule, however, incorporates two protections, both designed to protect defendants who choose to proceed without exercising their right to indictment. First, the requirement that the prosecutor file an accusation performs a "notice" function. The accusation

ensures that when criminal defendants waive the right to indictment, they nevertheless have notice prior to trial of the charges against which they must defend. The second protection is the requirement that waivers be in writing after criminal defendants have been informed of the right to indictment. That requirement provides increased assurance that criminal defendants have in fact agreed to allow the prosecution to go forward by way of accusation rather than by indictment.

With those purposes in mind, we consider the facts of this case. Nine months before defendant's trial, in *State v. Grunow, supra,* 199 *N.J.Super.* 241, 488 *A.*2d 1098, the Appellate Division held that aggravated manslaughter could be reduced to passion/provocation manslaughter when the actor was "in the grip of the mitigating elements of that crime." Thus, the Appellate Division decision in *Grunow* put Ciuffreda on notice that the court might charge him with passion/provocation manslaughter as a lesser-included offense of aggravated manslaughter. *See State v. Powell,* 84 *N.J.* 305, 419 *A.*2d 406 (1980) (holding that in murder trial court has duty to charge passion/provocation manslaughter when supported by sufficient facts, even when not requested by defendant).

As indicated above, after defendant's trial this Court rejected the Appellate Division's determination that aggravated manslaughter could be reduced to passion/provocation manslaughter. See *State v. Grunow, supra,* 102 *N.J.* 133, 506 *A.*2d 708. Therefore, as a matter of lesser-included-offense substantive law, the trial court's charge in this case was wrong, as the State readily concedes. But the Appellate Division opinion in *Grunow* fully satisfied the Rule's concern for notifying Ciuffreda that he would be exposed to the possibility of a passion/provocation conviction at his trial for aggravated manslaughter. The only question was whether the evidence at trial would develop a rational basis for a passion/provocation charge, and defendant readily acknowledges in his brief to this Court that "there was an adequate factual basis for the submission of a passion/provocation manslaughter charge to the

jury." *Cf. Grunow, supra,* 102 *N.J.* at 149, 506 *A.2d* 708 (although Grunow could not be retried for murder because a jury had acquitted him of that charge, nonetheless the court on retrial could "clarify that passion/provocation manslaughter may be an available verdict if the jury finds from the evidence that the State has proven the elements of that offense beyond a reasonable doubt").

Important to our conclusion is the timing of defendant's consent. The lengthy colloquy quoted above, from which we conclude that defendant did indeed consent to the passion/provocation manslaughter charge, came after defendant had rested his case, the day before the trial court instructed the jury. Thus, the oral consent given in this case is unlike that given in *State v. Wagner, supra,* 180 *N.J.Super.* 564, 435 *A.2d* 1190.

In that case defendant Richard Wagner, indicted for conspiracy, was convicted of receiving stolen property, a charge on which the grand jury had indicted his co-defendant but not Wagner. With defense counsel's oral consent and oral waiver of Wagner's right to a new indictment, the trial court amended the indictment to include Wagner in the "receiving" charge, which was not a lesser-included offense of conspiracy. The Appellate Division reversed, concluding that defense counsel's oral waiver was insufficient and that the defendant had been "deprived * * * of the due process and fundamental fairness inherent in our criminal justice system." *Id.* at 568, 435 *A.2d* 1190. Although the Appellate Division's opinion in *Wagner* does not disclose when the oral consent found insufficient in that case was given, we have examined the transcript of Wagner's trial and have determined that in fact the attempted waiver in that case occurred *before* trial. And in *Wagner,* unlike this case, there were no independent assurances that the defendant had notice prior to trial of the charges against which he had to defend.

We are satisfied that the unusual circumstances of this case do not fall within the contemplation of *Rule* 3:7-2. Here,

defendant had notice before his trial began that he might be charged with passion/provocation manslaughter. His self-defense posture applied as much to that charge as it did to aggravated manslaughter and reckless manslaughter. Moreover, defendant consented to the passion/provocation charge *after* all the evidence on both sides had been submitted. Under those circumstances, requiring the prosecution to file an accusation would amount to insisting on an empty formality: defendant already had notice of the charges, and all the evidence had already been presented. Similarly, to require defendant to agree in writing to proceed by way of accusation likewise makes little sense. Because defendant had notice before trial that he might be charged with passion/provocation manslaughter, and because he consented to that charge after all the evidence had been presented, we conclude that counsel's oral consent was sufficient to constitute a waiver of defendant's right to indictment.

Finally, we caution against a reading of this opinion that would take it beyond its narrow holding as confined by the unusual procedural posture in which the "consent" issue is raised. We signal no dilution of the significant rights of any defendant respecting indictment and waiver as embodied in *Rule* 3:7–2, nor do we undermine in any degree the holding in *Wagner, supra,* 180 *N.J.Super.* 564, 435 *A.*2d 1190.

Judgment reversed. The cause is remanded to the Law Division for reinstatement there of the judgment of conviction.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN–7.

*Opposed*-none.