```
NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION
```
This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4343-13T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

STEVEN CONTRERAS,

    Defendant-Appellant.

_____

        Argued October 31, 2016 — Decided August 7, 2017

        Before Judges Nugent and Haas.

        On appeal from Superior Court of New Jersey,
        Law Division, Middlesex County, Indictment No.
        10-11-1628.

        Alan D. Bowman argued the cause for appellant.

        Jason M. Boudwin, Assistant Prosecutor, argued
        the cause for respondent (Andrew C. Carey,
        Middlesex County Prosecutor, attorney; Mr.
        Boudwin, of counsel and on the brief).

PER CURIAM

    Defendant Steven Contreras appeals from an April 3, 2014

judgment of conviction for three counts of aggravated assault,

various conspiratorial offenses, and one count each of riot and

hindering prosecution. On appeal, defendant raises the following arguments:

> POINT I
>
> APPELLANT SHOULD HAVE BEEN PERMITTED TO WITHDRAW THE GUILTY PLEA ENTERED HEREIN. (PARTIALLY RAISED BELOW)
>
> POINT II
>
> THE PLEA TO CONSPIRACY TO COMMIT AGGRAVATED ASSAULT CONSTITUTED AN IMPROPER AMENDMENT OF THE INDICTMENT. (NOT RAISED BELOW)
>
> POINT III
>
> THE SENTENCE IMPOSED IS EXCESSIVE AND UNDULY PUNITIVE.

For the reasons that follow, we affirm.

On July 1, 2010, police charged defendant in juvenile delinquency complaints with offenses that, if committed by an adult, would constitute murder, aggravated assault, conspiracy, and criminal mischief. Two months later, the matter was transferred to the Law Division, Criminal Part.

On November 3, 2010, a Middlesex County Grand Jury charged defendant and three co-defendants in a multi-count indictment with second-degree conspiracy to commit aggravated assault, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:12-1(b)(1) (count one); fourth-degree conspiracy to commit riot, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:33-1 (count two); second-degree aggravated assault, N.J.S.A. 2C:12-

2                                                                              A-4343-13T4

1(b)(1) (counts three, six, and seven); third-degree criminal mischief, N.J.S.A. 2C:17-3(a)(1) (count four); first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2) (count five); fourth-degree riot, N.J.S.A. 2C:33-1(a) (count eight); and third-degree hindering apprehension or prosecution, N.J.S.A. 2C:29-3(a) (counts nine and ten). Following the indictment, defendant moved to suppress his statements to police. The court denied the motion. The charges against defendant were severed, and he was tried before a jury in April 2012.

The State presented the following proofs at defendant's trial. On June 25, 2010, at approximately 11:00 p.m., the victim, his wife, and their two adolescent children went for a walk around their neighborhood. Near the end of their walk, they noticed four teenagers, who appeared to be seventeen or eighteen years old, following them. The victim told his family to ignore them. One of the teenagers came very close to the family, tapped the victim on the shoulder, and said, "hey, man, I want to ask you something." When the victim turned around, the teenager punched him in the head, causing him to stagger. The attacker punched the victim in the head three or four more times, as the other teenagers encircled the victim's family. The victim's wife watched as one of the teenagers began to punch her older son in the head. The teenagers also began striking the victim's younger son. The teenagers then

took turns striking the victim's sons as the victim lay on the grass. One of the teenagers kicked him in the head.

Eventually, the teenagers fled the scene, returned to their car, and drove away. An anesthesiologist who lived nearby came to the scene to assist the family. When he arrived, he observed the victim's body was drooping, his breathing was shallow, and he spoke in short, incomprehensible slurs. Emergency medical technicians arrived and transported the victim to the Raritan Bay Medical Center. Medical personnel diagnosed the victim with a "hemorrhagic stroke"; his brain was bleeding. The victim was transferred to the Robert Wood Johnson Trauma Center where he was pronounced dead three days after the attack. The cause of death was blunt force trauma to the head.

The victim's older son recognized one of the assailants as co-defendant Julian C. Daley, a classmate from school. Police questioned Daley at his residence. He denied any knowledge of the assault. Daley claimed he was at a fast-food restaurant with his friends, co-defendant Christopher Conway and "Steve."

Police interviewed co-defendant Conway at his residence. Conway initially denied any knowledge of the incident, but eventually admitted there had been a "big fight" that night. Conway identified "Steve" as defendant, claiming he was present

A-4343-13T4

during the attack. Conway denied that either he or defendant took part in the actual attack.

The police next interviewed defendant.[1] According to defendant, on the evening of the incident, he and the co-defendants were drinking malt liquor. After stopping at a fast-food restaurant at approximately 11:00 p.m., defendant drove his friends around for some time. While doing so, another car cut them off. A road-rage incident ensued. During the incident, defendant pursued the other car; the occupants of the vehicles stopped, exited, and engaged in a heated exchange; defendant pursued the other car a second time; a co-defendant threw something at the other car, shattering the hood; and defendant pursued the car again, but it got away.

Following the road-rage incident, the co-defendants were "heated up," and co-defendant Daley suggested they "go find some kids and fuck them up." Defendant drove everyone into the neighborhood where the victim and his family were taking a walk. When the assailants saw the victim's family, they decided to fight them. Defendant remained in his car with the lights off while the co-defendants attacked the victim and his family. The co-

---

[1] Audio recordings of defendant's interviews with law enforcement were played during the trial.

A-4343-13T4

defendants returned to the car and defendant drove off. Everyone agreed not to speak about the incident.

In the days following the incident, defendants tried to coordinate their version of the incident in the event police tried to speak with them. Further investigation revealed that defendant and some of the co-defendants had selectively deleted cellular text messages and call logs to each other around the date of the incident. Defendant also admitted that co-defendant Daley instructed him to delete their text message conversations.

At the trial's conclusion, the jury found defendant guilty of the lesser-included offense of third-degree conspiracy to commit aggravated assault (count one); fourth-degree conspiracy to commit riot (count two); three counts of the lesser-included offenses of third-degree aggravated assault (counts three, six, and seven); fourth-degree riot (count eight); and hindering apprehension (count nine). The jury found defendant not guilty of the remaining offenses, including murder and the lesser-included offense of aggravated manslaughter, but was unable to reach a verdict on the lesser-included offense of reckless manslaughter (count five). The matter was returned to the trial calendar for retrial on the latter charge.

At a status conference held on June 20, 2012, defendant rejected the State's plea offer of a four-year prison term subject

to the No Early Release Act, <u>N.J.S.A.</u> 2C:43-7.2 (NERA), in exchange

for his guilty plea to reckless manslaughter.  At that time, the

court had the following exchange with defendant:

> <u>The court</u>: Mr. Contreras, I want you to sit. I want you to pay really, really close attention.  What you do is entirely up to you. Do you understand that, young man?
>
> <u>Defendant</u>: Yes.
>
>    . . . .
>
> <u>The court</u>: You sat through a trial and you knew pretty much what the evidence is going to be.  You never know what a jury is going to do.  You sat through the trial.  You probably still have a copy of the model jury charge.
>
> <u>Defendant</u>: Yes.
>
> <u>The court</u>: And if you recall that charge simply says conspiracy agreement, reckless act cause of death.  Think long and hard what a jury is going to do if that's the only charge in front of them, okay?  Because if they come back and they convict you it's 85% [sic] offense and I can tell you that there's a presumption of incarceration and you will be going to State Prison absent some highly unusual circumstances.  I don't see any in this case.  Do you understand that?
>
> <u>Defendant</u>: Yes, sir.
>
> <u>The court</u>: I am not telling you to take [the] State's plea offer.  I'm not.  But the plea offer the State is offering you is no more than four . . . . Is it a flat four?
>
> <u>The State</u>: [NERA] would still apply but it would be the third degree range.

The court: Now, a four, three and a half years, it's not close to 15 or 20. Do you understand that?

Defendant: Yes, sir.

The court: And what you do is your life. Certainly you should talk to your family. Make sure the decision you make you think is best for you. You have every right to get in front of a jury again, okay?

Defendant: Yes, sir.

The court: But I don't want to hear any complaint if a jury comes back other than some manner you would like. You have pretty clear testimony that you drove, dropped them off, drove them away, and that the kids were looking for a brawl, beat somebody up . . . [a]nd somebody was hit. Somebody died. Now, again, I can't tell you what a jury is going to do. It sounds kind of reckless to me at a minimum and that's all that's necessary for guilt. You decide, young man, what you want to do. All I'm advising you, I want to make sure you understand it, it would not shock me if they came back differently than they came back the last time. Again, don't rely on what I'm saying. You sat through the trial. Talk to your lawyer. Make an intelligent informed decision. Whatever that is I'll accept it. Do you understand me?

Defendant: Yes, sir.

The matter was then re-listed for trial, but it was not re-tried. On November 27, 2012, defendant pleaded guilty to an amended charge of conspiracy to commit aggravated assault and agreed to testify truthfully at the co-defendants' trial. In

8

exchange, the State agreed to recommend a four-year prison term subject to NERA to run concurrent to any sentence imposed on the offenses the jury convicted him of committing. The State also agreed to consider lowering its recommended four-year prison term to a three-year sentence subject to NERA and to dismiss an outstanding juvenile complaint. Finally, the State agreed to recommend treating defendant as a youthful offender, allowing him to go to a juvenile facility rather than state prison. If defendant failed to cooperate in accordance with the plea agreement, the State would be relieved of making its sentencing recommendations, in which case defendant would face the possibility of a maximum sentence.

At the November 27 plea hearing, defense counsel advised defendant that by pleading guilty to a second-degree crime, he could face either a ten-year prison sentence with five years of parole ineligibility, a seven-year sentence with three and a half years of parole ineligibility, or face a term set by the court where he must serve eight-five percent of the sentence before becoming eligible for parole. Defense counsel further advised defendant his guilty plea would not require imposition of a mandatory sentence, but the sentence would be subject to NERA.

Defendant acknowledged that his attorney explained the consequences of NERA. Further, defendant acknowledge the State's

agreement and that his failure to cooperate under the plea agreement could subject him to the maximum custodial sentence. Defendant said he understood the difficulty of withdrawing from his guilty plea once the court accepted it, and he admitted several times that his plea was not the product of any threats, promises, or coercion.

Trial of co-defendants Christian M. Tinli and Cash Q. Johnson commenced on August 6, 2013.[2] Defendant reneged on his plea agreement. Defendant testified he never conspired with co-defendants Tinli and Johnson. Defendant also testified Tinli and Johnson conspired with no one on the date of the incident. Co-defendants Tinli and Johnson were convicted of one count of simple assault and acquitted of all other charges.

Following the jury verdict, the State moved for specific performance of the plea agreement, seeking to be relieved of its sentencing recommendation on the basis that defendant did not testify truthfully. Defendant opposed the motion and moved to withdraw from the plea agreement. In support of his motion, defendant argued the court "bullied him into pleading guilty" at the June 2012 status conference, claimed he was never made aware

---

[2] Co-defendants Daley and Christopher Conway pleaded guilty to second-degree conspiracy to commit aggravated assault and first-degree manslaughter.

of his maximum custodial sentence, and contended his guilty plea violated his protection against double jeopardy.

The court granted the State's motion for specific performance, finding defendant had breached the plea agreement by failing to testify truthfully at his co-defendants' trial. The court determined defendant's testimony at trial was inconsistent with the statements he previously made to law enforcement. Such conduct left the court "overwhelmingly convinced" that defendant acted deliberately to help the co-defendants so as to lessen their involvement in the conspiracy.

The court denied defendant's motion to vacate or withdraw his guilty plea, ruling that his plea contained a sufficient factual basis and that defendant waived his double jeopardy defense. Additionally, the court found unpersuasive defendant's argument that he did not understand his potential maximum sentence and that the court had coerced him into pleading guilty at the June 2012 status conference. The court also concluded defendant had not satisfied the factors for plea withdrawal as set forth in State v. Slater, 198 N.J. 145 (2009).

Following the denial of defendant's motion, the court sentenced defendant to the following custodial terms. On count five, conspiracy to commit second-degree aggravated assault, the court sentenced defendant to an eight-year custodial term subject

to NERA, the sentence to run consecutive to a three-year sentence imposed on count three, the lesser-included offense of third-degree aggravated assault.  On counts six and seven, the lesser-included offenses of third-degree aggravated assault, the court imposed three-year custodial terms to run concurrently with each other but consecutive to count three.  On count eight, riot, the court imposed a one-year custodial term concurrent to all other counts.  Finally, the court imposed an eighteen-month custodial term on count nine, hindering prosecution, to run consecutive to counts three, six, and seven, but concurrent with count eight.

The court found aggravating factor one, N.J.S.A. 2C:44-1(a)(1), "the nature and circumstances of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner." The court next found aggravating factor two, N.J.S.A. 2C:44-1(a)(2), "the gravity and seriousness of the harm inflicted on the victim, including whether or not the defendant knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance . . . ." The judge found this factor because of the "particularly heinous" nature of the harm inflicted on the victim which resulted in death.  The court also found aggravating factor nine, N.J.S.A. 2C:44-1(a)(9), the need for deterring defendant and others from violating the law,

because of the intolerable nature of the offense. Additionally, the court found aggravating factor three, <u>N.J.S.A.</u> 2C:44-1(a)(3), the risk that defendant will commit another offense, because of defendant's lack of candor while testifying at his co-defendants' trial. The court did not give this factor significant weight. Lastly, the court found aggravating factor eight, <u>N.J.S.A.</u> 2C:44-1(a)(8), which states, in part, that defendant committed an offense against a law enforcement officer in the performance of his duties. The court gave this factor some weight as a result of defendant's conviction for hindering apprehension or prosecution.

The court found only mitigating factor seven, <u>N.J.S.A.</u> 2C:44-1(b)(7), defendant's lack of criminal record, because he had no prior history of criminal activity.

On appeal, defendant first argues he "should have been permitted to withdraw the guilty plea entered herein." He claims the statements the trial court made at a status conference misstated the law concerning reckless manslaughter. Specifically, he asserts "the court misstated . . . that a retrial would involve presentation to the jury of a charge that 'simply says <u>conspiracy agreement</u>, reckless act causing death.'" Emphasizing this point, as well as the court's statement to defendant to "think long and hard what a jury is going to do if that's the only charge in front of them," defendant insists his plea was coerced. In addition,

13 <span>A-4343-13T4</span>

for the first time on appeal, defendant raises an argument that the trial court's acceptance of the jury's partial verdict and intent to retry defendant on reckless manslaughter violated the constitutional protection against double jeopardy.

Defendant's arguments are without sufficient merit to warrant discussion. R. 2:11-3(e)(2). We add these comments only. Defendant's contention he was misled by comments the trial court made during a status conference is premised on a partial statement the court made, which defendant takes entirely out of context. Defendant overlooks the court's reference to defendant having sat through trial, having a copy of the model jury charges, and therefore knowing the content of the charge on reckless manslaughter. Considered in context, the court was doing nothing more than pointing out a possibility defendant could be convicted even if he did not participate in the actual beating of the victim.

In addition, the court repeatedly told defendant it was his decision to accept or reject the plea offer. Defendant heeded the advice and rejected the offer. Five months later, when jury selection for the retrial was scheduled to begin, the parties negotiated a new plea agreement that was more favorable to defendant. The plea colloquy leaves no doubt defendant was fully informed of every material aspect of the new plea agreement and voluntarily entered his plea.

Defendant's double jeopardy argument is also devoid of merit. Generally, "'double jeopardy . . . do[es] not prohibit retrial of a defendant when a prior prosecution for the same offense has ended in mistrial attributable to the inability of the jury to agree on a verdict,' because 'the jeopardy to which the defendant is exposed is considered a continuation of original jeopardy, which was not terminated by the mistrial.'" State v. Johnson, 436 N.J. Super. 406, 421 (App. Div. 2014) (alterations in original) (quoting State v. Abbati, 99 N.J. 418, 425-26 (1985)). Defendant has pointed to nothing in the record to suggest either that the mistrial in his case was granted for any reason other than the jury's inability to reach a verdict, or that the trial court's decision to declare a mistrial was inappropriate.

Having considered defendant's remaining arguments in view of the record and applicable legal principles, we find no basis for concluding the trial court abused its discretion when it denied defendant's application to withdraw his guilty plea. State v. Munroe, 210 N.J. 429, 442 (2012) (citing Slater, supra, 198 N.J. at 145).

In his second point, defendant argues for the first time on appeal his plea to conspiracy to commit aggravated assault, as amended from reckless manslaughter, must be vacated because the amended charge was not a lesser-included offense. The trial court

15                                                    A-4343-13T4

amended the charge to facilitate the parties' plea agreement. We find no plain error in the court doing so. R. 2:10-2.

Generally, "[i]n the absence of a valid waiver, the submission to the jury of an offense which is not a lesser included offense violates a defendant's state constitutional right not to be tried except upon the presentment or indictment of a grand jury." State v. Battle, 256 N.J. Super. 268, 281 (App. Div.) (citations omitted), certif. denied, 130 N.J. 393 (1992). Although a defendant generally must waive the right to an indictment in writing, State v. Ciuffreda, 127 N.J. 73, 79 (1992), there are circumstances in which oral consent will suffice. See id. at 82. We deem this to be such a circumstance.

Here, defendant explicitly agreed to plead to a lesser offense, and thus to an amended charge. By doing so, he reduced his potential prison sentence to four years subject to NERA. In addition, defendant pleaded guilty to the conspiratorial offense because he believed such a conviction would be easier to expunge. Under those circumstances, defendant's guilty plea to conspiracy to commit aggravated assault — an offense for which he had not been indicted — was not clearly capable of producing an unjust result.

Defendant argues in his final point that his sentence is excessive and unduly punitive. Our review of the record reveals

16 <span></span>

both that the court's findings of aggravating and mitigating factors are supported by the record and that the court followed the sentencing guidelines in New Jersey's Code of Criminal Justice. The sentence does not "shock the judicial conscience" in light of the facts of the case. State v. Roth, 95 N.J. 334, 364-65 (1984). Accordingly, we find no basis for reversing the trial court's sentencing discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION